Nicholas O. Kennedy (State Bar No. 280504)
nicholas.kennedy@bakermckenzie.com
**BAKER & McKENZIE LLP**
1900 North Pearl Street, Suite 1500
Dallas, TX 75201
Telephone:    214 978 3081
Facsimile:    214 978 3099

Byron R. Tuay (State Bar No. 308049)
byron.tuay@bakermckenzie.com
**BAKER & McKENZIE LLP**
10250 Constellation Blvd., Suite 1850
Los Angeles, CA 90067
Telephone:    310 201 4728
Facsimile:    310 201 4721

Attorneys for Non-Party GOOGLE LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| *In Re Ex Parte* Application of | Case No. 5:24-mc-80152-EJD |
| HO CHAN KIM, | **NON-PARTY GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA** |
| Applicant. | |
| | **HEARING DATE: NOVEMBER 14, 2024**<br>**TIME: 9:00 A.M.**<br>**COURTROOM: 4, 5TH FLOOR** |
| | Judge: The Honorable Edward J. Davila<br>Courtroom 4, 5th Floor<br>San Jose Courthouse<br>280 South First Street<br>San Jose, California 95113 |

**NOTICE OF MOTION AND CONCISE STATEMENT OF RELIEF**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on November 14, 2024, at 9:00 a.m. or as soon thereafter as this matter can be heard, in the United States District Court, Northern District of California, located at the San Jose Courthouse, Courtroom 4, 5ᵗʰ Floor, 280 South First Street, San Jose, California 95113, non-party GOOGLE, LLC shall move and hereby does move under Federal Rule of Civil Procedure 45(c)(3)(A) to quash the Subpoena served on Google by Applicant Ho Chan Kim on July 9, 2024.

The Subpoena should be quashed because it seeks to unmask an anonymous user and cannot meet the heightened standard required to justify such requests that implicate First Amendment protections intended to protect online anonymous speech.  In this way, the Subpoena circumvents U.S. First Amendment protections of free expression.  The Subpoena is unduly burdensome and intrusive, and is being used as a vehicle for harassment to silence an anonymous online speaker.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Jordan Zuccarello, the Proposed Order and all other pleadings, records, and files in this case, any oral argument on this matter, and such other and further matters as the Court may consider.

Dated: September 9, 2024

Respectfully submitted,

**BAKER & McKENZIE LLP**

By:  */s/ Nicholas O. Kennedy*
　　 Nicholas O. Kennedy
　　 Attorney for
　　 Non-Party GOOGLE, LLC

# **TABLE OF CONTENTS**

I.    FACTUAL AND PROCEDURAL BACKGROUND...................................................6

     A.    The Anonymous User Posts Allegedly Defamatory YouTube Video. ..........................6

     B.    Applicant Seeks to Unmask the Anonymous User to Pursue Defamation Suit in Korea. ...........................................................................................................7

     C.    Google Discovers the Anonymous User Logged in From the United States. ..............8

II.    LEGAL STANDARD.....................................................................................................8

     A.    Courts Must Quash Subpoenas that Impose an Undue Burden. ..................................8

     B.    28 U.S.C. § 1782 Limits Applicants from Issuing Subpoenas that are Unduly Intrusive and Overly Burdensome. ...........................................................................9

     C.    The Good Cause Standard Limits Section 1782 Discovery under the Fourth Intel Factor when an Applicant Seeks to Identify an Anonymous Online Speaker. ..............9

     D.    Cases that Present First Amendment and Free Speech Issues Require a Closer Examination of the Potential Harms and Chilling Effect on Free Speech...................10

III.    ARGUMENT AND AUTHORITIES .........................................................................11

     A.    The Subpoena Should be Quashed under the Third Intel Factor If It Seeks to Circumvent the U.S. Constitutional Policy of Freedom of Expression. ......................12

     B.    The Subpoena Should be Quashed under the Fourth Intel Factor Because the Subpoena is Unduly Burdensome and Has Not Satisfied the Necessary Evidentiary Safeguards. ......................................................................................13

         1.    U.S.-Based IP Login Data Warrants Application of the Higher Evidentiary Standard Articulated in Highfields...............................................................14

            a.    Applicant Does Not Present Competent Evidence of his Defamation Claim. ..............................................................................16

            b.    The Magnitude of Resulting Harm to the Anonymous UserWeighs in Favor of Quashing the Subpoena. ........................................16

         2.    Applicant Failed to Show Good Cause Under 26(d) Before Issuing the Subpoena...............................................................................................17

     C.    If the Applicant Cannot State a Viable Claim for Defamation, then the Subpoena is an Improper Vehicle for Harassment. ....................................................................19

IV.    CONCLUSION............................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Anonymous Online Speakers*,
    661 F.3d 1168 (9th Cir. 2011) ......................................................................12, 14

*Apple Inc. v. Samsung Elecs. Co.*,
    No. 11-CV-01846-LHK, 2011 U.S. Dist. LEXIS 53233 (N.D. Cal. May 18, 2011) ..............10

*Art of Living Found v. Does*,
    No. 10-cv-05022-LHK, 2011 U.S. Dist. LEXIS 129836 (N.D. Cal. Nov. 9, 2011)................16

*Buckley v. Am. Const'l Law Found*,
    525 U.S. 182 (1999)........................................................................................16

*Columbia Ins. Co. v. Seescandy.com*,
    185 F.R.D. 573 (N.D. Cal. 1999)....................................................................11, 19

*Hey, Inc. v. Twitter, Inc.*,
    No. 22-mc-80034-DMR, 2023 U.S. Dist. LEXIS 98590 (N.D. Cal. Jun. 6, 2023)...........14, 15

*Highfields Capital Mgmt., L.P. v. Doe*,
    385 F. Supp. 2d 969 (N.D. Cal. 2005) ........................................................... *passim*

*In re Hoteles City Express*,
    No. 18-mc-80112-JSC, 2018 U.S. Dist. LEXIS 117444 (N.D. Cal. July 13, 2018)..........10, 18

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)................................................................................. *passim*

*In re Komanokai*,
    No. 4:20-mc-80149-KAW, 2020 U.S. Dist. LEXIS 211774 (N.D. Cal. Nov. 12, 2020) ........20

*In re Lazaridis*,
    865 F. Supp. 2d 521 (D.N.J. 2011) ...................................................................17

*McIntyre v. Ohio Elections Comm.*,
    514 U.S. 334 (1995).....................................................................................6, 11

*Music Grp. Macao Commercial Offshore Ltd. v. Does*,
    82 F. Supp. 3d 979 (N.D. Cal. 2015) ..................................................................20

*Pers. Audio LLC v. Togi Entm't, Inc.*,
    Case No. 14-mc-80025-RS, 2014 U.S. Dist. LEXIS 44854 (N.D. Cal. Mar. 31, 2014) ..........9

*In re PGS Home Co.*,
    No. 19-mc-80139-JCS, 2019 U.S. Dist. LEXIS 204520 (N.D. Cal. Nov. 19, 2019) ...... *passim*

*In re Planning & Dev. of Educ., Inc.*,
  No. 21-mc-80242-JCS, 2022 U.S. Dist. LEXIS 14563 (N.D. Cal. Jan. 26, 2022)..................13

*In re Saki Takada*,
  No. 22-mc-80221-VKD, 2023 U.S. Dist. LEXIS 17159
  (N.D. Cal. Feb. 1, 2023)........................................................................11, 14, 15, 19

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
  208 F.R.D. 273 (N.D. Cal. Apr. 19, 2002).............................................................10

*In re Tagami*,
  No. 21-mc-80153-JCS, 2021 U.S. Dist. LEXIS 221352 (N.D. Cal. Nov. 16, 2021) ..............13

*In re Tokyo Univ.*,
  No. 21-mc-80102-DMR, 2021 U.S. Dist. LEXIS 171385 (N.D. Cal. Sept. 9, 2021) ..... *passim*

*Underwager v. Channel 9 Austl.*,
  69 F. 3d 361 (9th Cir. 1995) .................................................................................6

*In re Yuichiro Yasuda*,
  No. 19-mc-80156-TSH, 2020 U.S. Dist. LEXIS 26242 (N.D. Cal. Feb. 14, 2020)...............11

**Statutes**

28 U.S.C. § 1782................................................................................................... *passim*

**Other Authorities**

David D. Lee, *Church or cult? Abe murder spotlights Unification Church and other
  South Korean pseudo-religious' groups*, SOUTH CHINA MORNING POST (Jul. 30,
  2022) ..............................................................................................................16

Fed. R. Civ. P. 26............................................................................................... *passim*

Fed. R. Civ. P. 45.....................................................................................................9

https://www.youtube.com/@Bok72.............................................................................7

## MEMORANDUM OF POINTS AND AUTHORITIES

Anonymous speech is a bedrock principle of the U.S. Constitution.  It allows individuals to freely speak their mind without fear of retaliation.  This protection of anonymity "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular."  *McIntyre v. Ohio Elections Comm.*, 514 U.S. 334, 357 (1995).  The subpoena at issue here risks violating this core tenet.

Applicant Ho Chan Kim is a pastor in the Republic of Korea.  He claims that an anonymous YouTube user in the United States[1] posted a video purporting to expose a pastor of sexual assault and alcoholism.  Although the video did not identify Applicant, Applicant seeks to sue that anonymous user in Korea for defamation.  He asks this Court to assist by authorizing a subpoena intended to identify the anonymous user.

But unmasking the anonymous user violates their constitutional right to free speech.  The Court should not enable this violation, when the speech at issue is protected by the First Amendment.[2] Indeed, this Court has recognized that the First Amendment privilege is important because "enforcing a subpoena in this kind of setting poses a real threat to chill protected comment on matters of interest to the public."  *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 980 (N.D. Cal. 2005). So too here.

The discretionary *Intel* factors support quashing the Subpoena.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004).  The third *Intel* factor in particular favors quashing the Subpoena because Applicant seeks to unmask an anonymous user, circumventing U.S. policies protecting anonymous speech.  The fourth *Intel* factor similarly favors quashing the subpoena because it is unduly intrusive and burdensome by encroaching on these important constitutional protections.

---

[1] As described in the declaration filed concurrently herewith, Google discovered that the IP access log data associated with the relevant account indicate that it has been accessed from a U.S. based IP address since January 2024. *See* Declaration of Zuccarello.

[2] Google recognizes that not all speech is protected by the First Amendment, and seeks the Court's assistance to determine whether the content of the speech is defamatory.  *Underwager v. Channel 9 Austl.*, 69 F. 3d 361, 366 (9th Cir. 1995) ("The scope of constitutional protection extends to statements of opinion on matters of public concern that do not contain or imply a provable factual assertion.").

Importantly, IP data associated with the requested YouTube channel shows that the anonymous user has logged in from the United States at least since January 2024.  This suggests that this user may be a U.S. citizen entitled to U.S. Constitutional protections.  As a result, a higher evidentiary burden is required to justify the Subpoena and overcome these protections.  Applicant has failed to demonstrate the "good cause" required to meet that burden.  Applicant also has failed to present the necessary evidence of "real harm."  Each of these inadequacies independently justifies quashing Applicant's Subpoena.

For these reasons, the chilling effect that this Subpoena has on First Amendment protections including the freedom to remain anonymous outweighs the Court's discretion to authorize the Subpoena.  The Court should therefore quash the July 9, 2024 Subpoena.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Anonymous User Posts Allegedly Defamatory YouTube Video.

Applicant is a pastor of Life Word Mission, a Christian organization in the Republic of Korea. ECF No. 1-1, Declaration of Ho Chan Kim ¶ 2.  Applicant alleges that on May 17, 2024, an anonymous individual published a video on a YouTube channel named "*A Fisherman Catching a Fish*" that contained various false claims concerning the Life Word Mission and Applicant.[3]  *Id*. ¶ 7. This video does not state Applicant's name or any identifying features.  Despite this, Applicant claims that members of the Life Word Mission community have viewed information about the mission and its pastors online and could infer that the video's allegedly false claims refer to Applicant.  *Id*. ¶¶ 4, 6, 9-14.  Applicant further alleges that the claims made about an unnamed Life Word Mission pastor in the YouTube Video are defamatory because they accuse the unidentified pastor of molesting a local sister, drinking alcohol, and committing a "secret fraud," among other general insults.  *Id*. ¶¶ 19, 21-22.  Applicant claims that the YouTube video had been viewed approximately 9,300 times when the *ex parte* application was filed.  *Id*. ¶¶ 14, 15, 24.  Applicant further alleges that the content of the YouTube Video caused significant reputational harm to Applicant within the Life Word

---

[3] Applicant states that the YouTube channel written in Korean is "생선잡는어부," located at https://www.youtube.com/@Bok72.

Mission community and "emotional, psychological, and mental harm." *Id*. ¶¶ 14, 15, 24.

**B.    Applicant Seeks to Unmask the Anonymous User to Pursue Defamation Suit in Korea.**

On June 20, 2024, Applicant moved *ex parte* under 28 U.S.C. § 1782, seeking authorization for discovery from non-party Google for use in a potential foreign proceeding.  ECF No. 1.  The *ex parte* application included a proposed subpoena seeking the production of (i) personal identifying information including all names, dates of birth, addresses, e-mail addresses, and phone numbers associated with the YouTube Channel; (ii) IP access logs, including the dates and times, and IP addresses from which the YouTube Channel was accessed; and (iii) payment information including banking information associated with the YouTube Channel.  *Id*. at 12-16.

To justify the request for disclosure of the anonymous user's identity, Applicant stated that they intend to file a civil lawsuit against the anonymous user in Korea for "defamation and insulting" under the laws of Korea.  ECF Nos. 1, 3.  Applicant also attached a declaration from counsel in Korea alleging that: (i) the anonymous user had committed the torts of defamation and insulting under Articles 750 and 751 of the Civil Acts of Korea; (ii) the YouTube Video satisfies the elements for defamation, insulting, and business interference under the laws of Korea; and (iii) Applicant's Korean civil suit would withstand a motion to dismiss.  ECF Nos. 1, 3; ECF No. 1-2, Declaration of Kyongsok Chong ¶¶ 7-12.

On July 2, 2024, the Court granted the application in part and denied the application in part.  ECF No. 7.  The Court found that Applicant's Section 1782 Application satisfied the statutory factors, and that the discretionary *Intel* factors – at this stage, at least – also favored granting the application as to the documents necessary to ascertain the users' identity.  *Id*. at 7.  But the Court also concluded that there was no justification for Applicant's demand for the requested banking documents.  *Id*. at 7.  Instead, the Court denied Applicant's request for banking information associated with the YouTube Channel as unduly intrusive under the fourth *Intel* factor because banking information was not necessary to identify the user, and because Applicant's justification for the request was based on the unfounded assumption that the account could have been created using fictitious information.  *Id*. at

6. The Court's order was made without prejudice to arguments in subsequent motions to quash filed by Google or any account users. *Id*. at 7.

Applicant served Google with the Subpoena on July 9, 2024. Google now moves to quash.

### C.      Google Discovers the Anonymous User Logged in From the United States.

Consistent with the Court's July 2 order, Google conducted a thorough search for information in its possession responsive to the Subpoena. In doing so, Google discovered that as of January 25, 2024, the IP access log data for the Google account associated with the YouTube Channel resolved to IP addresses based within the United States. (Declaration of Jordan Zuccarello, "Declaration of Zuccarello"). While some IP data indicated that the anonymous user logged-in to the associated Google account from Korea prior to January 25, 2024, recent IP logins resolve to the United States. *Id*.

Google sent Applicant's counsel a letter containing general and specific objections to the Subpoena on July 23, 2024. On July 31, 2024, Google and Applicant discussed Google's objections to the Subpoena, a potential resolution for the matter without judicial intervention, and the deadline before which Google must file a motion to quash in this matter. On August 7, 2024, Google filed a stipulation with a proposed order to extend Google's deadline to file a Motion to Quash. ECF No. 11. On August 8, 2024, the Court granted Google's stipulation, extending Google's deadline to file until September 9, 2024. ECF No. 20. Google now moves to quash this Subpoena under the discretionary *Intel* factors and because Applicant has failed to show competent evidence of "real harm" as required by the *Highfields* test. *See Intel*, 542 U.S. at 241, 264-65; *Highfields*, 385 F. Supp. 2d at 980.

## II.      LEGAL STANDARD

### A.      Courts Must Quash Subpoenas that Impose an Undue Burden.

Under Fed. R. Civ. P. 45(d)(3)(A)(iv), the Court must quash a subpoena if it "subjects a person to undue burden." While the party moving to quash has the burden of persuasion, the party issuing the subpoena must demonstrate that the discovery sought is relevant. *Pers. Audio LLC v. Togi Entm't, Inc.*, Case No. 14-mc-80025-RS, 2014 U.S. Dist. LEXIS 44854, at *2 (N.D. Cal. Mar. 31, 2014).

**B.      28 U.S.C. § 1782 Limits Applicants from Issuing Subpoenas that are Unduly Intrusive and Overly Burdensome.**

A district court may order the production of documents or testimony for use in a foreign legal proceeding under 28 U.S.C. § 1782.  *See* 28 U.S.C. § 1782(a); *Intel*, 542 U.S. at 249.  This requires the applicant to show that (1) the discovery is sought from a person residing in the district of the court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an "interested person."  *Id.*

Even if the statutory requirements are met, however, a "district court is not required to grant a Section 1782(a) discovery application simply because it has the authority to do so."  *Id*. at 264.  Instead, the Court must consider four factors when determining whether to exercise its discretion: (1) whether the entity from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome.  *Intel*, 542 U.S. at 241, 264-65.

**C.      The Good Cause Standard Limits Section 1782 Discovery under the Fourth *Intel* Factor when an Applicant Seeks to Identify an Anonymous Online Speaker.**

Under the fourth *Intel* factor, courts have also required that applicants satisfy the "good cause" standard under Rule 26(d) when the discovery is sought to identify an anonymous online speaker.  *See e.g., In re Tokyo Univ.,* No. 21-mc-80102-DMR, 2021 U.S. Dist. LEXIS 171385*, at *7 (N.D. Cal. Sept. 9, 2021); *In re PGS Home Co.*, No. 19-mc-80139-JCS, 2019 U.S. Dist. LEXIS 204520, at *7 (N.D. Cal. Nov. 19, 2019); *In re Hoteles City Express*, No. 18-mc-80112-JSC, 2018 U.S. Dist. LEXIS 117444, at *8 (N.D. Cal. July 13, 2018).  Requiring the plaintiff to show "good cause" allows the court to balance the need for accelerated discovery in consideration of the administration of justice against the prejudice to the responding party.  *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. Apr. 19, 2002) (explaining that "good cause" exists for permitting limited expedited discovery); *see also Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2011 U.S.

Dist. LEXIS 53233, at *4 (N.D. Cal. May 18, 2011).  In applying the Rule 26(d) good cause standards, courts examine four factors:

> Whether (1) the plaintiff can identify the missing party with sufficient specificity such that the court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible.

*Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999).[4]

**D.    Cases that Present First Amendment and Free Speech Issues Require a Closer Examination of the Potential Harms and Chilling Effect on Free Speech.**

The First Amendment's free-speech clause protects "an author's decision to remain anonymous." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995).  Even when a Section 1782 applicant satisfies the statutory requirements and has shown good cause for their proposed subpoena, the Court must still consider the potential chilling effect the subpoena would have on First Amendment rights by unmasking an anonymous speaker's identity.  *See Tokyo Univ.*, 2021 U.S. Dist. LEXIS 171385, at *8.  Although Section 1782 promotes assistance to foreign tribunals, such assistance may not breach the First Amendment protection of free speech unless the applicant provides a compelling need for the discovery.  *In re PGS Home Co.*, No. 19-mc-80139-JCS, 2019

---

[4] The good cause analysis has not been uniformly adopted by courts within this district.  This has resulted in a patchwork of analytical approaches to weighing First Amendment concerns of anonymous online speakers against the need for discovery in foreign proceedings in the context of 1782 applications.  *See In re Saki Takada*, No. 22-mc-80221-VKD, 2023 U.S. Dist. LEXIS 17159, at *12 (N.D. Cal. Feb. 1, 2023) (declining to require the Section 1782 applicant to show "good cause" because the test "does not have clear support in the language of the statute itself.").  For example, some courts have interpreted *Intel* to displace the limiting factors enumerated in Rule 26(d)'s good cause standard and instead apply a minimum threshold requirement when assessing Section 1782 applications.  *See id.* at *15 ("[A]t a minimum, a district court can require an applicant to describe the legal and factual bases for a contemplated foreign legal proceeding, and to explain how the discovery the applicant seeks will aid prosecution of that proceeding.").  Other courts have explicitly required the applicant to show good cause when the court must consider First Amendment protections.  *See In re Yuichiro Yasuda*, No. 19-mc-80156-TSH, 2020 U.S. Dist. LEXIS 26242, at *13 (N.D. Cal. Feb. 14, 2020) ("If the foreign litigant asserts that an anonymous speaker's speech is actionable, the First Amendment protects the speaker from being unmasked unless the applicant [can satisfy the four 'good cause' factors]." (listing factors)).

U.S. Dist. LEXIS 204520, at *13 (N.D. Cal. Nov. 25, 2019).

In order to unmask an anonymous speaker, a litigant thus must "persuade[] the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff." *Id.* (quoting *Music Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015)). Although this protection "is not unlimited," applicants seeking disclosure must meet their evidentiary burden before discovery is authorized. *See In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (explaining how identification is only appropriate where the compelling need for discovery outweighs the First Amendment privilege). In other words, to ensure that a proper balance is struck, and that the First Amendment is not unjustifiably cast aside, applicants who seek to unmask anonymous speakers must do more than "plead and pray" that they have a viable defamation claim. *Highfields*, 385 F. Supp. 2d at 975. Instead, applicants must persuade the Court that there is "a real evidentiary basis" for believing that the defendant acted unlawfully and caused "real harm." *Id*. Second, even if the applicant makes an evidentiary showing of "real harm," then the court still must weigh the magnitude of the harm that would be caused by a ruling in either direction. *Id*. at 976.[5]

## III.   ARGUMENT AND AUTHORITIES

The Subpoena should be quashed if it violates the anonymous user's First Amendment freedom to express themselves anonymously. As explained below, the chilling effect that the Subpoena has on anonymous speech outweighs the Court's discretion to authorize the requested discovery under Section 1782 as limited by the *Intel* factors. Specifically, the third *Intel* factor favors quashing the Subpoena if it violates the anonymous user's free speech protections. Similarly, the fourth *Intel* factor also supports quashing the Subpoena if it is unduly intrusive by seeking to unmask

---

[5] Some courts have refused to apply the *Highfields* test to Section 1782 applications seeking to unmask anonymous users where there is no indication that the anonymous online speakers are entitled to First Amendment protections. But even those courts have implicitly recognized that the evidentiary burden in *Highfields* is appropriate in cases where the anonymous speaker may be entitled to Free Speech protections. *Compare Tokyo Univ.*, 2021 U.S. Dist. LEXIS 171385, at *9 (applying *Highfields* evidentiary basis to quash Section 1782 applicant's subpoena to unmask anonymous user) *with Hey, Inc.*, 2023 U.S. Dis. LEXIS 98590, at *8-*9 ("In *Tokyo University*, the court wrongly assumed without analysis that the speech at issue was entitled to First Amendment protection.").

an anonymous user without adequate justification or evidentiary basis.  And Applicant does not meet the good cause standard because he has failed to meet his burden to establish that he attempted to locate the anonymous user before turning to Google, or that his claim could withstand a motion to dismiss for defamation under Korean law.  Further, because the IP data for the Anonymous User shows a likelihood that this user is based in the U.S. and entitled to Constitutional free speech protections, Applicant must present competent evidence that he suffered real harm as a consequence of the YouTube video, but has failed to do so.  Finally, the Court may quash the Subpoena because it is being used as a vehicle for harassment, which is evident from the lack of evidentiary support that Applicant has provided.  Each of these reasons independently support granting the Motion to Quash.

**A.      The Subpoena Should be Quashed under the Third *Intel* Factor If It Seeks to Circumvent the U.S. Constitutional Policy of Freedom of Expression.**

The Subpoena may be quashed under the third *Intel* factor if it is an attempt to circumvent the U.S. First Amendment protection of freedom of anonymous expression. The principles underlying the First Amendment "may counsel against a court of the United States exercising its discretion to aid in punishing speech that would be protected in this country." *In re Tagami*, No. 21-mc-80153-JCS, 2021 U.S. Dist. LEXIS 221352, at *9, n. 1 (N.D. Cal. Nov. 16, 2021) (discussing how First Amendment violations could be analyzed under the third *Intel* factor).  Here, Applicant attempts to use his Section 1782 Subpoena to circumvent the U.S. constitutional right to anonymous speech. *See In re Planning & Dev. of Educ., Inc.*, No. 21-mc-80242-JCS, 2022 U.S. Dist. LEXIS 14563, at *10 (N.D. Cal. Jan. 26, 2022) ("[T]he third discretionary factor may also weigh against granting an application that conceals an attempt to contravene the First Amendment's purpose without justification.").  Google does not take any position as to whether the speech itself is entitled to First Amendment protections because Google is not in a position to evaluate the truth of the statements at issue.  Google thus asks the Court to determine whether the speech is facially defamatory.  For this reason, the Court should use its discretion to quash the Subpoena, if it finds that the speech at issue is the type of speech that the First Amendment seeks to protect.

**B.      The Subpoena Should be Quashed under the Fourth *Intel* Factor Because the Subpoena is Unduly Burdensome and Has Not Satisfied the Necessary Evidentiary Safeguards.**

Where a Section 1782 applicant seeks leave to conduct discovery to identify an anonymous speaker, courts have evaluated the request under the fourth *Intel* factor—whether the request is unduly intrusive or burdensome.  *See, e.g.*, *Tokyo Univ.*, 2021 U.S. Dist. LEXIS 171385, at *14 (N.D. Cal. Sept. 9, 2021);  *Hey, Inc. v. Twitter, Inc.*, No. 22-mc-80034-DMR, 2023 U.S. Dist. LEXIS 98590, at *6 (N.D. Cal. Jun. 6, 2023); *In re Takada,* No. 22-mc-80221-VKD, 2023 U.S. Dist. LEXIS 17159, at *3 (N.D. Cal. Feb. 1, 2023).  And when such a request to unmask an anonymous user violates their constitutional right to express themselves freely, the Subpoena should be quashed.  *See e.g., Tokyo Univ.*, No. 21-mc-80102-DMR, at *14 (granting Twitter's motion to quash when Section 1782 applicant's subpoena was unduly burdensome under *Intel* because it violated user's First Amendment protections).

Here, the request is unduly burdensome because it infringes on an anonymous speaker's First Amendment right to speak anonymously and because unmasking anonymous users online chills free speech. Applicant seeks information from Google revealing the identity of an anonymous online speaker.  But it is well settled that an author's decision to remain anonymous is an "aspect of the freedom of speech protected by the First Amendment." *In re Anonymous*, 661 F.3d at 1173.  As with other forms of expression, "the ability to speak anonymously on the Internet promotes the robust exchange of ideas," and allows individuals to express themselves absent fear of retaliation. *Id*. (quoting *McIntyre*, 514 U.S. at 341-42).

The anonymous user's access logs show that the user signed in from the United States, suggesting that the anonymous user is a U.S. citizen entitled to constitutional protections.  As such, the Subpoena should be quashed unless the Court finds that Applicant has met the First Amendment safeguards that apply in such circumstances.  If, and only if, the Applicant has satisfied the necessary safeguards, then Google respectfully requests that the Court consider whether the speech at issue is protected under the First Amendment.  If Applicant cannot satisfy these safeguards - which Google argues to be the case - or if the Court determines that the relevant speech is protected under the First

Amendment, then the Court should quash the Subpoena.  For the reasons below, Applicant cannot satisfy these evidentiary safeguards, and thus the harm from the Subpoena outweighs the infringement of these constitutional rights.

> 1.   *U.S.-Based IP Login Data Warrants Application of the Higher Evidentiary Standard Articulated in* Highfields*.*

The Court should apply the *Highfields* standard in cases that implicate speech protected by the First Amendment even if Google, a non-party subpoena recipient, cannot definitively verify the anonymous user's citizenship.

While Google is unaware of prior cases addressing this point directly, the IP log access data showing log-ins from the United States suggest that the anonymous user is a U.S. citizen and therefore entitled to constitutional protections, along with the application of the *Highfields* test.  Google has no ability to determine the citizenship of its users.  Nor does Google require verification of citizenship to create an account on YouTube.  Google therefore is unlikely ever to be in a position to oppose a Section 1782 application with definitive proof of a user's U.S. citizenship.  But here, the fact that the anonymous user logged in to the Google account using IP addresses based in the U.S. on many occasions going back to January 2024 strongly suggests that this anonymous user is a U.S. citizen.

Unlike *Zuru, Takada, Hey, Inc.,* and other cases in which the courts declined to apply *Highfields,* the facts here suggest that the anonymous user may be a U.S. citizen, and thus entitled to U.S. Constitutional protections.[6]  *See In re Saki Takada,* 2023 U.S. Dist. LEXIS 17159, at *8 ("Here, as in *Zuru*, there is no reason to believe that the anonymous poster is a U.S. citizen . . . Google cites no authority for the expansive proposition that anonymous speech implicates First Amendment protections if that speech is merely *accessible* to U.S. citizens over the Internet.").  Indeed, while Google is unable to determine the citizenship of its users, consistent user access log-ins over an extended period between January and July from within the United States suggest that the anonymous user is a U.S. citizen.  The alleged defamatory speech here is not merely accessible to people in the

---

[6] U.S. citizens, whether inside or outside U.S. territory, possess First Amendment rights.  *Agency for Int'l Dev. Alliance for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 222 (2013).

United States over the Internet, rather the associated Google account for the YouTube channel was accessed through U.S. based IP addresses.  The evidence that this user is based within the United States justifies application of the analytical framework set forth in *Highfields*.

Furthermore, the serious allegations of the speech at issue support application of the stricter *Highfields* standard.  *Art of Living Found v. Does*, No. 10-cv-05022-LHK, 2011 U.S. Dist. LEXIS 129836, at *13 (N.D. Cal. Nov. 9, 2011) (applying *Highfields* test for anonymous speech concerning alleged cult behavior for an India-based organization).  In choosing the proper standard to apply, "the district court should focus on the 'nature' of the speech conducted by the defendant, rather than the cause of action alleged by the plaintiff." *Id.* (quoting *In re Anonymous Online Speakers*, 661 F.3d at 1173).  Like *Art of Living Found*, the anonymous user here asserts that Applicant, a pastor of Life Word Mission community,[7] molested a local sister, drank alcohol, and committed a "secret fraud." Declaration of Ho Chan Kim ¶¶ 19, 21-22. The serious conduct of which the anonymous user accuses Applicant warrants heightened evidentiary safeguards because of the potential for retaliation and harassment.  *See Buckley v. Am. Const'l Law Found*, 525 U.S. 182, 199 (1999) ("The injury to speech is heightened . . . at the precise moment when the [anonymous speaker's] interest in anonymity is greatest.").  Accordingly, because the accused conduct raises substantial First Amendment concerns, this anonymity warrants the extra precautions provided by the *Highfields* test, regardless of the U.S. nexus present. *Art of Living Found*, 2011 U.S. Dist. LEXIS 129836, at *20 ("[W]here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity.") (citing *Perry v. Schwarzenegger*, 591 F. 3d 1147 at 1160, 1165 (9th Cir. 2010)).

Finally, Google is an American-based company, with its own privacy policy to protect its users' data and private information.  Requiring Google to disclose the individual names and identifying information of the anonymous user in response to an improper subpoena that encroaches

---

[7] Similar to *Art of Living Found*, Life Word Mission has been accused of cult-like behavior on other sources online. *See* David D. Lee, *Church or cult? Abe murder spotlights Unification Church and other South Korean pseudo-religious' groups*, SOUTH CHINA MORNING POST, (Jul. 30, 2022), https://www.scmp.com/week-asia/lifestyle-culture/article/3187140/church-or-cult-abe-murder-spotlights-unification-church.

on users' right to express themselves anonymously conflicts with these policies. *See In re Lazaridis*, 865 F. Supp. 2d 521, 525 (D.N.J. 2011) (emphasizing the First Amendment protections at risk when violating a U.S. company's privacy policy by requiring the company to divulge anonymous users' identification information). Simply put, this anonymous user is very likely a U.S. citizen. As such, they are entitled to constitutional protections that would be undermined by allowing this Subpoena. Google therefore respectfully requests that the *Highfields* test be applied and that the Court consider whether this Subpoena must be quashed under that standard.

      *a. Applicant Does Not Present Competent Evidence of his Defamation Claim.*

    Under the two-part *Highfields* test, Applicant first bears the burden of establishing a "a real evidentiary basis" that the defendant acted unlawfully and caused "real harm." *Highfields*, 385 F. Supp. 2d at 975. Then, if the applicant makes an evidentiary showing of "real harm," the Court must weigh the magnitude of the harm that would be caused by a ruling in either direction. *Id*. at 976.

    Applicant has not presented competent evidence necessary to support his purported claims under Korean law as required by the *Highfields* test. Under that test, the Court must assess the Subpoena first by looking "beyond the pleadings to determine if there is an evidentiary basis for concluding that the requested discovery is appropriate." *In re PGS*, 2019 U.S. Dist. LEXIS 204520, at *5 (citing *Highfields*, 285 F. Supp. 2d at 975). As discussed above, Applicant makes only conclusory statements that the YouTube video is defamatory and states alleged falsities about Applicant. But other than claiming the words that were allegedly directed at Applicant were "extremely insulting," Applicant offers no evidence of the harm or damage the video has caused him by, e.g., identifying specific tangible consequences he suffered. As a result, Applicant has failed to satisfy the first step of the *Highfields* test because his application lacks evidentiary support for the conclusion that he suffered real harm or that the video establishes a prima facie case against the anonymous user for defamation and insults under Korean law.

      *b. The Magnitude of Resulting Harm to the Anonymous User Weighs in Favor of Quashing the Subpoena.*

    Under the second step of the *Highfields* test, the Court must balance the harms to Applicant

against those to the anonymous user.  Even if Applicant had satisfied the first step of the *Highfields* test, which he has not, the Court should still quash the Subpoena because the potential harm that would flow from unmasking the anonymous user and depriving them of their First Amendment protection to speak anonymously outweighs the alleged harm to Applicant.  The potential harm to the anonymous user would be violating their constitutional rights, disclosing their identity, and exposing the user to potential civil damages claims in Korea as a consequence of posting a video that purports to expose a pastor of a Korean church for assaulting another community member.  Authorizing the Subpoena would thus silence the anonymous user and have a chilling effect on their free expression.

The harm to Applicant, on the other hand, is minimal.  Applicant will be unable to obtain from Google unverified personal information associated with the YouTube channel and Google account, but may still investigate the identity of the anonymous user through other means, including the Korean legal system.  This does not preclude Applicant from exercising any rights, and does not prevent the lawsuit they seek to pursue in Korea.  This minimal harm to Applicant is thus outweighed by the First Amendment concerns relating to disclosing the anonymous user's identity.  *See In re PGS*, 2019 U.S. Dist. LEXIS 204520, at *17 (finding anonymous Tweets to constitute legitimate commercial speech that enjoys First Amendment protection that outweighed any harm caused from the Tweets).  For these reasons, Applicant cannot satisfy the *Highfields* test and the Court should quash the Subpoena.

2.   *Applicant Failed to Show Good Cause Under 26(d) Before Issuing the Subpoena.*

The Court should also quash the Subpoena because Applicant has not shown good cause for the Subpoena.  Within the fourth *Intel* factor analysis, courts in this district have applied a good cause analysis in cases where litigants seek to unmask anonymous online users.  *See e.g., In re Tokyo Univ.*, No. 21-mc-80102-DMR, 2021 U.S. Dist. LEXIS 171385, at *7 (N.D. Cal. Sept. 9, 2021); *In re PGS Home Co.*, No. 19-mc-80139-JCS, 2019 U.S. Dist. LEXIS 204520, at *7 (N.D. Cal. Nov. 19, 2019); *In re Hoteles City Express*, No. 18-mc-80112-JSC, 2018 U.S. Dist. LEXIS 117444, at *8 (N.D. Cal. July 13, 2018).

Nothing in *Intel* dictates that the Court should lower the evidentiary burden required of Section 1782 applicants. Some courts within the Northern District of California have improperly concluded that the Ninth Circuit's Rule 26(d) evidentiary requirement was replaced by the Supreme Court's *Intel* factors. *See e.g., In re Saki Takada*, No. 22-mc-80221-VKD, 2023 U.S. Dist. LEXIS 17159, at *15 (N.D. Cal. Feb. 1, 2023). But, the language in *Intel* makes clear that the Supreme Court never intended to lower the evidentiary burden required of Section 1782 applicants, nor to displace the Rule 26(d) requirement in the Ninth Circuit. Instead, the Supreme Court in *Intel*, while observing the Congressional intent behind the statute, reiterated that Section 1782 "leaves the issuance of an appropriate order to the discretion of the court." *Intel*, 542 U.S. 241 at 260. Indeed, the Supreme Court repeatedly emphasized the vast discretion of the district court in assessing Section 1782 applicants' discovery requests, observing, "[i]f Congress had intended to impose such a sweeping restriction on the district court's discretion, at a time when it was enacting liberalizing amendments to the statute, it would have included statutory language to that effect." *Intel*, 542 U.S. 241 at 260 (quoting *In re Application of Gianoli Aldunate*, 3 F.3d 54, 59 (2d Cir. 1993)). There is no such statutory language. And the Subpoena fails to meet the *Intel* standard.

In determining whether a plaintiff – or in this case an applicant seeking 1782 discovery – has shown good cause, courts consider whether (1) the applicant can identify the missing party with sufficient specificity such that the court can determine that defendant is a real person or entity who could be sued in federal court; (2) the applicant has identified all previous steps taken to locate the elusive defendant; (3) the applicant's suit against defendant could withstand a motion to dismiss; and (4) the applicant has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible. *See Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999).

As relevant here, Applicant has failed to demonstrate that he took any prior steps to locate the anonymous user's identity before submitting his *ex parte* application and seeking to issue the Subpoena to Google. Applicant also failed to demonstrate that his Korean suit could withstand a motion to dismiss.

Specifically, Applicant has also failed to meet the third good cause factor because he has failed to put forth any evidence aside from a conclusory declaration from his counsel in Korea that the contemplated defamation suit against the anonymous user could withstand a motion to dismiss. Applicant also fails to provide evidence of the alleged reputational, psychological, and emotional harm that the YouTube video could have caused him. He even fails to demonstrate that anyone from the Life Word Mission community even saw the video. Nevertheless, Applicant asks this Court to authorize discovery on the premise that *some* viewers of the YouTube video who are familiar with the Life Word Mission pastors *might* infer that the allegations made in the YouTube video were about Applicant, thereby causing him undefined harm. Without evidence that such claims could survive a motion to dismiss, Applicant thus asks this Court to set an improperly low bar to justify the disclosure of a speaker's identity. But this low bar and lack of evidence does not meet the good cause standard.

Because Applicant has failed to meet the good cause standard, the Subpoena should be quashed. *See Tokyo Univ.*, 2021 U.S. Dist. LEXIS 171385, at *7 (granting motion to quash section 1782 subpoena after finding the section 1782 applicant failed to satisfy factors two and three of the Rule 26(d) good cause test).

### C.    If the Applicant Cannot State a Viable Claim for Defamation, then the Subpoena is an Improper Vehicle for Harassment.

Finally, the Court should quash the Subpoena because it is being used as a vehicle for harassment. Separate from  the fourth *Intel* factor, the Court may quash any Section 1782 subpoena that it finds to be unduly intrusive or a fishing expedition. *See In re Komanokai*, No. 4:20-mc-80149-KAW, 2020 U.S. Dist. LEXIS 211774, at *6 (N.D. Cal. Nov. 12, 2020). (denying Section 1782 application to unmask an anonymous user where *Intel* factors were met but its purpose was to intimidate or harass the user into taking down negative business review). The anonymous user is entitled to anonymously express "legitimate commercial speech" of which "the public may well be interested." *Music Grp.*, 82 F. Supp. 3d at 985. Accordingly, if Applicant cannot state a viable claim for defamation under Korean law, the Subpoena is being used as a vehicle for harassment. *See In re Komanokai*, at *6 (denying Section 1782 application where on its face, the Court could not ascertain

whether the speech would state a viable claim for defamation under Japanese law).  This provides another independent basis to quash the Subpoena.

**IV.     CONCLUSION**

For the foregoing reasons, Google respectfully requests that the Court determine whether the speech at issue is protected under the First Amendment, and if so issue an order quashing the July 9, 2024 Subpoena and granting Google any and all further relief to which it is justly entitled.

Dated: September 9, 2024                          Respectfully submitted,

                                                 **BAKER & McKENZIE LLP**

                                                 By: _/s/ Nicholas O. Kennedy_
                                                      Nicholas O. Kennedy
                                                      Attorney for
                                                      Non-Party GOOGLE, LLC