Carlos Makoto Taitano, State Bar No. 275820
Taitano & Taitano LLP
P.O. Box 326204
Hagatna, Guam 96932
Telephone:    (671) 777-0581
Email:        cmakototaitano@taitano.us.com

*Attorney for Applicant*
*Ho Chan Kim*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| *In re Ex Parte* Application of | ) |
| | ) Case Number: 24-mc-80152-EJD |
| Ho Chan Kim, | ) |
| | ) **HO CHAN KIM'S OPPOSITION TO** |
| Applicant. | ) **NON-PARTY GOOGLE LLC'S MOTION** |
| | ) **TO QUASH SUBPOENA** |
| | ) |
| | ) Date: November 14, 2024 |
| | ) Time: 9:00 a.m. |
| | ) |
| | ) |
| | ) |

# Table of Contents

Page

I.     INTRODUCTION……………………………………………………….....1

II.    STATEMENT OF THE ISSUES TO BE DECIDED…………………………….2

III.   STATEMENT OF THE RELEVANT FACTS……………………………...3

IV.   LEGAL STANDARD……………………………………………………...4

V.     ARGUMENT…………………………………………………………...5

      A.     The First Amendment does not protect speech that involves
only foreign persons in a foreign country with no connections
to the United States…………………………………………………...6

           1.     *No First Amendment rights apply to the Applicant who
is a Korean national living and working in the Republic
of Korea and the Anonymous Individual who is likely a
foreign citizen who published the YouTube Video from
Korea in the Korean language directed towards a
Korean audience*…………………………...…………………….....6

           2.     *The YouTube Video was published in Korea and was not
directed to the United States*…………………………..………………9

           3.     *This Court's analysis in Zuru is persuasive and
should be followed by this Court in finding that
the First Amendment does not apply to foreign
speech in the context of Section 1782*…………………………...…11

      B.     The Applicant satisfied the good cause standard under Rule 26(d)……………...12

      C.     Even if the First Amendment might protect what is entirely
foreign speech in this Case, the Applicant satisfied the *Highfields* test
because the Applicant made out a *prima facie* case with competent
evidence, and the magnitude of the harms tilts in favor of the Applicant……….14

           1.     *If the First Amendment might protect what is entirely
foreign speech in this Case, then the Highfields standard
would be appropriate because the YouTube Video is
commercial speech*…………………………………………….....14

           2.     *The Applicant adduced competent evidence addressing all of
the inferences of fact that would need to be proven in order
to prevail in the civil lawsuit under the law of Korea*……………….....15

               (a)     The YouTube Video is an unlawful act………………………….16

               (b)     The Anonymous Individual's unlawful act was done
intentionally…………………………………………….....17

*Page i of iv*

1

**Table of Contents**

2

Page

3

      (c)    The Applicant has suffered an injury…..…………………………17

4

      (d)    There is causation between the YouTube Video
              and the injuries suffered by the Applicant…………………………19

5

      (e)    The Anonymous Individual will fail to prove the
              applicable affirmative defense………………………………………20

6

     3.    *The magnitude of harms tilts in favor of the Applicant*…………………21

7

VI.    CONCLUSION…………………………………………………...……………23

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**24-mc-80152-EJD**
**Opposition to Non-Party Google LLC's Motion to Quash Subpoena**

**Table of Authorities**

**Page(s)**

**Cases**

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*,
   570 U.S. 205, 133 S.Ct. 2321, 186 L.Ed.2d 398 (2013)……………………..……...6,10

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*,
   140 S.Ct. 2082, 207 L.Ed.2d 654 (2020)…………………………………………..…6

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)………………………………18,19

*hey, inc. v. Twitter, Inc.*, Case No. 22-mc-80034-DMR,
   2023 WL 3874022 (N.D. Cal. Jun. 6, 2023)……………………………………....…12

*Highfields Capital Mgmt. L.P. v. Doe*,
   385 F. Supp. 2d 969 (N.D. Cal. 2005)…………………………………………………...14

*In re Anonymous Online Speakers*.
   661 F.3d 1168 (9th Cir. 2011)……………………………………………………………15

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*,
   634 F.3d 557 (9th Cir. 2011)……………………………………………………………5

*In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corporation*
   *dated July 23, 2020*, 337 F.R.D. 639 (N.D. Cal. 2020)………………………………6,8,10

*In re Takada*, Case No. 22-mc-80221-VKD,
   2023 WL 1442844 (N.D. Cal. Feb. 1, 2023)……………………………………..*passim*

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed. 355 (2004)………………………………….5

*Kleindienst v. Mandel*,
   408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972)………………………..…………9

*Rocci v. Ecole Secondaire Macdonald-Cartier*,
   755 A.2d 583 (N.J. 2000)……………………………………………………………19,21

*Silverman v. Mendiburu*,
   785 F. App'x 460 (9th Cir. 2019)…...…………………………..…………………15,19,20

*Thunder Studios, Inc. v. Kazal*, 13 F.4th 736 (9th Cir. 2021)…………………………9,10

*Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*,
   Case No. 21-mc-80102-DMR, 2021 WL 4124216
    (N.D. Cal. Sep. 9, 2021)……………………………………………..……………*passim*

*Watchtower Bible & Tract Soc'y of New York v. Village of Stratton*,
   536 U.S. 150, 122 S.Ct. 2080, 153 L.Ed.2d 205 (2002)…………………………...…6

*Page iii of iv*

**24-mc-80152-EJD**
**Opposition to Non-Party Google LLC's Motion to Quash Subpoena**

**Table of Authorities**

**Page(s)**

**Cases**

*W.J.A. v. D.A.*,
    43 A.3d 1148 (N.J. 2012)……………….…………………………………….19,21

*Zuru, Inc. v. Glassdoor, Inc.*,
    Case No. 22-mc-80026-AGT, 2022 WL 2712549
    (N.D. Cal. July 11, 2022)……………………………………………………..*passim*

**Statutes**

28 U.S.C. § 1782………………………………………….………………………….5

**Rules**

Fed. R. Civ. P. 45(d)(3)(A)(iii)…………………………..…………………..……..4,5

**Treatises**

1 Rodney A. Smolla, *Law of Defamation* § 7:7 (2d ed. 2021)……………….………………18,19

*24-mc-80152-EJD*
***Opposition to Non-Party Google LLC's Motion to Quash Subpoena***

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The Applicant Ho Chan Kim (hereinafter "**Applicant**") filed his *Ex Parte* Application for Order Pursuant to 28 U.S.C. § 1782 Authorizing Discovery for Use in Foreign Proceedings (hereinafter "**Application**") requesting limited discovery from Google LLC (hereinafter "**Google**") to aid foreign proceedings in the Republic of Korea.

The Applicant is seeking to unmask the true identity of an anonymous YouTube user (hereinafter "**Anonymous Individual**") who published an insulting, false, and defamatory YouTube video (hereinafter "**YouTube Video**") concerning the Applicant.

The Applicant has filed a civil lawsuit against the Anonymous Individual in the Republic of Korea.

Contrary to Google's contention, First Amendment protections are inapplicable to the Anonymous Individual and the speech which is the YouTube Video, because the Applicant is a Korean national who lives and works in the Republic of Korea, the YouTube Video is in the Korean language and directed towards a Korean audience, the Anonymous Individual published the YouTube Video when he was physically in the Republic of Korea, and the Anonymous Individual is likely a Korean national because neither Google nor the Anonymous Individual has provided evidence to show that the Anonymous Individual is a U.S. citizens; therefore, First Amendment protections are inapplicable in this Case, because the Applicant, the Anonymous Individual, and the YouTube Video lack any U.S. connection.

Even if the First Amendment may be applicable, the Applicant satisfied the good cause standard under Rule 26(d) of the Federal Rules of Civil Procedure and the *Highfields* test.

Therefore, the Applicant respectfully requests that this Court deny Google's motion to quash the subpoena, and order Google to provide the information requested in the subpoena so that the Applicant can identify the Anonymous Individual in order for the Applicant to proceed with his civil lawsuit in the Republic of Korea.

*24-mc-80152-EJD*
**Opposition to Non-Party Google LLC's Motion to Quash Subpoena**

## II.      STATEMENT OF THE ISSUES TO BE DECIDED

1.       Whether the *YouTube* Video is speech protected under the First Amendment because there is a possibility that the Anonymous Individual *may* be a United States citizen.

2.       If the YouTube Video is speech protected under the First Amendment, whether the Applicant meets both prongs of the two-part *Highfields* test.

3.       If the YouTube Video is not speech protected under the First Amendment, whether the Applicant has met the standard articulated in *Zuru*.

4.       Whether the good cause standard under Rule 26(d) of the Federal Rules of Civil Procedure applies in the Section 1782 context, and if it does, whether the Applicant has shown good cause to conduct discovery under Rule 26(d) of the Federal Rules of Civil Procedure.

## III.      STATEMENT OF THE RELEVANT FACTS

The Applicant is a Korean national who resides in the Republic of Korea, and is a Pastor in the Republic of Korea at Life Word Mission, which is a South Korean Christian religious mission. ECF No. 1-1, ¶¶ 2-3; Second Declaration of Ho Chan Kim (hereinafter "**2d Kim Decl.**") ¶ 3, September 23, 2024. The Applicant has been living and dedicating his life to his faith. 2d Kim Decl. ¶ 6. The Applicant has built up his reputation as a Pastor over many years, and is well reputed within the community. *Id.* ¶ 7; Jung Decl. ¶¶ 5-9.

On January 3, 2024, the Anonymous Individual published an insulting, false, and defamatory YouTube Video concerning the Applicant.[1] 2d Kim Decl. ¶ 5, Ex. 1; ECF No. 1-1, ¶¶ 7, 13-28, Exs. 1-3. In addition to insulting the Applicant, the YouTube Video falsely accuses

---

[1] Google inaccurately alleges that "Applicant alleges that on May 17, 2024, an anonymous individual published a video …". ECF No. 13 at 6. The Applicant did not allege that the YouTube Video was published on May 17, 2024. Instead, the Applicant stated "**Exhibit 1** is a true and correct screenshot of the YouTube Video as of May 17, 2024.", and therefore, stated that the screenshot attached as an exhibit was as of May 17, 2024. ECF No. 1-1, ¶ 7. The YouTube Video was published on January 3, 2024. 2d Kim Decl. ¶ 4, Ex. 1.

*24-mc-80152-EJD*
**Opposition to Non-Party Google LLC's Motion to Quash Subpoena**

the Applicant of sexually assaulting a local sister, drinking alcohol which is a sin under the teachings of Life Word Mission, and committing a secret fraud. ECF No. 1-1, ¶¶ 18-23.

When the Applicant first learned about the YouTube Video, the Applicant was shocked that he was being falsely accused of sexually assaulting a sister, committing the sin of drinking alcohol, and committing fraud, and he was shocked at the extremely hateful speech that was being directed towards him. 2d Kim Decl. ¶ 8. Since learning of the YouTube Video, the Applicant has been under immense stress, and because of the stress, the Applicant has been suffering from insomnia for months and was diagnosed with depression caused by the YouTube Video. ECF No. ¶ 16; 2d Kim Decl. ¶ 10. The Applicant has been unable to go to crowded places because he feels humiliated and fearful that people may know about the YouTube Video. 2d Kim Decl. ¶ 11. The Applicant feels as though others are blaming him of the despicable acts that he is being accused of committing. *Id.* ¶ 12. Whenever the Applicant delivers sermons and sees believers watching their smartphones, he gets flashbacks of the YouTube Video, which causes him to be in fear that the believers are watching the YouTube Video. *Id.* ¶ 13. The Applicant has learned that many believers are losing their faith because of the accusations against him contained in the YouTube Video, which has devastated the Applicant both mentally and emotionally. *Id.* ¶ 14. Since the YouTube Video was published, the number of believers attending the Applicant's sermons has decreased, which has also devastated the Applicant. *Id.* ¶ 17. The Applicant is considering quitting his job as a Pastor because of the fear, stress, humiliation, and harm that the YouTube Video is causing to both him and to other believers, and is only persevering with prayers and with the help of his faith. *Id.* ¶ 15. If the Applicant is unable to clear his reputation through his civil lawsuit, the Applicant will be forced into quitting his job. *Id.* ¶ 16. The Applicant has felt helpless for months, unable to do anything to clear his reputation, while the Anonymous Individual hides behind his anonymity avoiding any accountability for his insults and falsehoods. *Id.* ¶ 18.

Numerous Life Word Mission believers have also viewed the YouTube Video, have identified the YouTube Video to concern the Applicant, and have expressed concern about the Applicant and what is being stated within the YouTube Video, which has significantly harmed the

Page **3** of **23**

*24-mc-80152-EJD*
**Opposition to Non-Party Google LLC's Motion to Quash Subpoena**

Applicant's good name within the community. Jung Decl. ¶¶ 10-25. As a result of the YouTube Video, the Applicant is considering quitting as a Pastor, because of his tarnished reputation, and currently is only persevering with the help of his faith. 2d Kim Decl. ¶ 15. However, if his reputation cannot be repaired, the Applicant may be forced to quit as a Pastor. *Id.* ¶ 16.

The Applicant has filed a civil lawsuit against the Anonymous Individual in the Suwon District Court, Anyang Branch Court, in the Republic of Korea, Civil Case Number 2024Gaso117176, for defamation and insulting[2] (hereinafter "**Civil Case**"). ECF No. 1-1, ¶ 29. However, the Applicant has been unable to identify the true identity of the Anonymous Individual preventing him from proceeding with the Civil Case against the Anonymous Individual. *Id.* ¶ 30.

The Applicant is unable to identify the Anonymous Individual because Korean courts lack jurisdiction over Google which is head quartered in Mountain View, California. ECF No. 1-2, ¶¶ 6, 13-16.

The Applicant filed the Application to obtain personal identifying information (hereinafter "**PII**") of the Anonymous Individual so that he can identify the Anonymous Individual in order to pursue the Civil Case. *Id.* ¶ 14.

This Court granted the Application and the Applicant served the subpoena upon Google. ECF No. 7; ECF No. 13-1, ¶ 3. Google has moved to quash the subpoena. ECF No. 13.

## IV.    LEGAL STANDARD

Rule 45(d)(3)(A)(iii) of the Federal Rules of Civil Procedure requires a court to "quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).

---

[2] Google inaccurately alleges that "Applicant stated that they intend to file a civil lawsuit against the anonymous user in Korea for "defamation and insulting" under the laws of Korea. ECF No. 13 at 7. The Applicant did not state that, and has already filed a civil lawsuit in Korea. ECF No. 1-1, ¶ 29.

*24-mc-80152-EJD*
*Opposition to Non-Party Google LLC's Motion to Quash Subpoena*

The U.S. Supreme Court in *Intel* identified the following four factors to be considered by a court when exercising its discretion to authorize discovery pursuant to a Section 1782 application: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign county or the United States; and, (4) whether the request is unduly intrusive or burdensome. *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011) (cleaned up) (*citing Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004)).

Since discovery under Section 1782 is guided by the standards set forth in the Federal Rules of Civil Procedure, some courts have applied the good cause standard that governs Rule 26(d) requests for early discovery in determining whether to allow a Section 1782 applicant to obtain information to unmask an anonymous speaker. 28 U.S.C. § 1782(a); Fed. R. Civ. P. 45(d)(3)(A)(iii); *Tokyo Univ. of Soc. Welfare v. Twitter, Inc*, Case No. 21-mc-80102-DMR, 2021 WL 4124216, at *3 (N.D. Cal. Sep. 9, 2021); *but see In re Takada*, Case No. 22-mc-80221-VKD, 2023 WL 1442844, at *5 (N.D. Cal. Feb. 1, 2023) (requiring showing of "good cause" does not have clear support in the language of the Section 1782). In applying the Rule 26(d) good cause standard, courts examine four factors: whether (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that the defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible. *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *3.

## V.     ARGUMENT

*24-mc-80152-EJD*
*Opposition to Non-Party Google LLC's Motion to Quash Subpoena*

The First Amendment does not protect the Anonymous Individual, because the YouTube Video was published in a foreign country, and there is no evidence that the Anonymous Individual is a United States citizen. Therefore, this Court should not apply the *Highfields* test, which is a balancing test applied where First Amendment protections apply to the speech at issue, and instead should apply the analysis articulated in *Zuru*.

### A.   The First Amendment does not protect speech that involves only foreign persons in a foreign country with no connections to the United States.

*1.   No First Amendment rights apply to the Applicant who is a Korean national living and working in the Republic of Korea and the Anonymous Individual who is likely a foreign citizen who published the YouTube Video from Korea in the Korean language directed towards a Korean audience.*

The First Amendment of the United States Constitution protects the rights of individuals to speak anonymously. *Watchtower Bible & Tract Soc'y of New York v. Village of Stratton*, 536 U.S. 150, 165-67, 122 S.Ct. 2080, 153 L.Ed.2d 205 (2002). "U.S. citizens, whether inside or outside U.S. territory, possess First Amendment rights." *In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corporation dated July 23, 2020*, 337 F.R.D. 639, 649 (N.D. Cal. 2020) (*citing Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc. ("USAID I")*, 570 U.S. 205, 133 S.Ct. 2321, 186 L.Ed.2d 398 (2013)). "While under some circumstances non-citizens within a U.S. territory possess certain constitutional rights, 'it is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution.'" *Id.* (*citing USAID I*, 570 U.S. 205); *Zuru, Inc. v. Glassdoor, Inc.*, Case No. 22-mc-80026-AGT, 2022 WL 2712549, at *5 (N.D. Cal. July 11, 2022) (*citing Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc. ("USAID II")*, 140 S.Ct. 2082, 2086, 207 L.Ed.2d 654 (2020)) (same proposition). Thus, if the Anonymous Individual "is a U.S. citizen or if he is a non-citizen within U.S. territory, then he may properly invoke the First Amendment; otherwise, he may not." *In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corporation dated July 23, 2020*, 337 F.R.D. at 649.

The Applicant is a Korean national who lives and works in the Republic of Korea. ECF No. 1-1, ¶ 2-3; 2d Kim Decl. ¶ 3. The Anonymous Individual is likely a foreign national because all IP logs of the Anonymous Individual originate from the Republic of Korea prior to January 25, 2024[3]. ECF No. 13-1, ¶ 4.

The only information that points to the Anonymous Individual having any connection to the United States are the IP logs between January 25, 2024 and July 16, 2024 that apparently show that the Anonymous Individual was accessing the Anonymous Individual's account from the United States. *Id.* Google likely has access to various forms of PII of the Anonymous Individual, including but not limited to the Anonymous Individual's true name, address, telephone number, banking information, and information concerning in which country the Anonymous Individual created his Google account and YouTube account. However, Google has not produced any evidence except a declaration explaining about the IP logs. ECF No. 13-1, ¶ 4.

An individual can be lawfully present in the United States not only as a U.S. citizen, but by obtaining various types of nonimmigrant visas. For example, an individual that obtains a B-2 visa can temporarily visit the United States for up to 6 months for purposes of tourism and vacation. Alternatively, the Anonymous Individual may be present in the United States unlawfully. Furthermore, the IP logs may be that of a virtual private network (commonly known as VPNs), which encrypts internet traffic in order to disguise a person's true online identity[4]. The VPN may have encrypted the Anonymous Individual's traffic to disguise his identity to appear as though it

---

[3] Although Google gives the impression that only "some" IP data prior to January 25, 2024 was from Korea by stating "While some IP data indicated that the anonymous user logged-in to the associated Google account from Korea prior to January 25, 2024 …", ECF No. 13 at 8, in fact, Google's evidence shows that "all" IP logs prior to January 25, 2024 are from Korea. ECF No. 13-1.

[4] What does a VPN hide? And what does it not hide?, https://surfshark.com/blog/what-does-a-vpn-hide (last visited September 23, 2024).

*24-mc-80152-EJD*
**Opposition to Non-Party Google LLC's Motion to Quash Subpoena**

is originating out of the United States. Therefore, IP logs do not serve as evidence to prove the citizenship status of a person.

Even if VPNs or other anonymizing tools were not used, and the IP logs truly originate from the United States, the YouTube Video was published from the Republic of Korean on January 3, 2024, which is prior to the Anonymous Individual entering the United States. The Applicant was unable to find any case authority addressing whether the First Amendment protects purely foreign speech if the speaker temporarily entered the United States at other times. However, speech by foreign nationals while present in the United States are entitled to First Amendment protection. *In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corporation dated July 23, 2020*, 337 F.R.D. at 649 ("Doe was legally present within the U.S. at the time he sent the emails at issue"). Therefore, where the speech takes place is the determining factor, not where the foreign national is coincidentally at when the discovery is being sought. Unless the Anonymous Individual is a U.S. citizen, because the YouTube Video was published outside of the United States, it is not protected under the First Amendment merely by the Anonymous Individual visiting the United States at some point in time.

Without clear proof of the United States citizenship of the Anonymous Individual, it is inherently unfair for Google to not disclose all of the personal identifying information of the Anonymous Individual in its possession, which may paint a different picture about the actual nationality of the Anonymous Individual.

Google argues that the Court should apply the *Highfields* test because the Anonymous Individual is likely a U.S. citizen, or because the nationality of the Anonymous Individual cannot be ascertained. However, Google lacks evidence to prove that the Anonymous Individual is a U.S. citizen. Furthermore, allowing First Amendment protections to foreign nationals would go against clear Ninth Circuit and Supreme Court precedent that have decided that foreign nationals speaking outside the United States do not have First Amendment rights.

Google is in the best position to obtain evidence to prove the nationality of the Anonymous Individual. Google likely has multiple means to communicate with the Anonymous Individual (by

*24-mc-80152-EJD*
**Opposition to Non-Party Google LLC's Motion to Quash Subpoena**

telephone, by email, and by even mailing documents to the address provided by the Anonymous Individual), and Google is in a position to explain to the Anonymous Individual that if the Anonymous Individual can provide evidence to Google that the Anonymous Individual is a U.S. citizen, then that will trigger First Amendment protections. If the Anonymous Individual is a U.S. citizen, then he has every reason to provide such evidence of his U.S. citizenship to Google.

However, in this Case, neither Google nor the Anonymous Individual have submitted any evidence to prove the Anonymous Individual's nationality, and under such circumstances, this Court should not apply the *Highfields* test where neither the subject speech nor the Anonymous Individual can be shown to be protected by the First Amendment. If this Court decides otherwise, that will lead to future speakers who do not possess U.S. citizenship to strategically decide to not oppose (and allow platforms such as Google to argue that the Anonymous Individual *may* be a U.S. citizen) in the hopes that the court will grant First Amendment protections that the Anonymous Individuals should not be entitled to.

Therefore, based upon U.S. Supreme Court precedent, the Applicant and the Anonymous Individual possess no rights under the U.S. Constitution and may not invoke First Amendment protections, and this Court should not expand First Amendment protections to speakers speaking in a foreign country merely because the Anonymous Individual *may* be a U.S. citizen, when the Anonymous Individual could have either opposed the subpoena and provided evidence of his nationality, or could have provided Google with evidence in support of its motion to quash to prove the Anonymous Individual's nationality.

> 2.     The YouTube Video was published in Korea and was not
>        directed to the United States.

The First Amendment protects speech for the sake of both the Anonymous Individual and the recipient. *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 743 (9th Cir. 2021). There is a First Amendment right of domestic listeners to receive speech from foreign speakers. *Id.* at 744 (*citing Kleindienst v. Mandel*, 408 U.S. 753, 758, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972)). However, where the speech at issue is "in other nations," it does not involve a right to receive information in the

*24-mc-80152-EJD*
**Opposition to Non-Party Google LLC's Motion to Quash Subpoena**

United States. *Id.* The speech at issue must be "directed at and received by [United States] residents". *Id.* (words in brackets added).

Here, the Applicant resides and works in Korea, the YouTube Video was published in Korea in the Korean language directed towards a Korean audience. Based upon these facts, the Anonymous Individual's speech was "in Korea" and was not "directed at and received by United States residents".

The only "connections" of the Applicant and the Anonymous Individual to the United States are that the Anonymous Individual published the defamatory statements on YouTube operated by Google, a Delaware corporation, and that the Anonymous Individual entered the United States after publishing his speech in Korea. *Thunder Studios, Inc.*, 13 F. 4th at 748-50 (Lee, J., dissenting).

The mere fact that the Applicant or the Anonymous Individual used Google's services have no effect upon the analysis, because Google operates worldwide, with its services provided in multiple languages including Korean, and merely using Google's services could hardly be considered as directing speech at United States residents.

Although there is a possibility that a resident of the United States "may" view the YouTube Video because it was published on the internet (which can be viewed by anyone worldwide), under *Thunder Studios, Inc.*, First Amendment protections only attach if the speech was "directed" to United States residents, which there is no indication of in this Case. *Thunder Studios, Inc.*, 13 F.4th at 744. Furthermore, allowing First Amendment protections because United States residents "may" view the YouTube Video would be an overextension of First Amendment protections, and contrary to both Ninth Circuit and U.S. Supreme Court precedent which have consistently held that foreign persons have no First Amendment Rights. *In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corporation dated July 23, 2020*, 337 F.R.D. at 649 (*citing USAID I*, 570 U.S.); *Thunder Studios, Inc.*, 13 F.4th at 744.

1
2
3

Furthermore, the Anonymous Individual published the YouTube Video on January 3, 2024, and on or after January 25, 2024, the Anonymous Individual's IP logs began to originate from the United States. 2d Kim Decl. ¶ 5, Ex. 1; ECF No. 13-1, ¶ 4.

4
5
6
7
8
9
10

Because the YouTube Video was published in Korea in the Korean language and concerns the Applicant who lives and works in Korea, there is nothing to indicate that the speech was directed at users in the United States, and although the Anonymous Individual may have been in the United States at some point in time, that does not extend First Amendment protections to speech of a foreign national in a foreign country that was not directed at users in the United States. Therefore, First Amendment protections should not be extended to the Anonymous Individual in this Case.

11
12
13

> 3.    *This Court's analysis in Zuru is persuasive and should be followed by this Court in finding that the First Amendment does not apply to foreign speech in the context of Section 1782.*

14
15
16
17
18
19
20
21

This Court in *Zuru* analyzed the application of the First Amendment in the context of Section 1782 discovery being sought to identify an anonymous speaker for online defamation involving foreign speech. *Zuru, Inc.*, 2022 WL 2712549. The applicant in *Zuru* was a company founded in New Zealand seeking discovery from Glassdoor, Inc. to file an action for defamation in New Zealand against former employees that worked for the company in New Zealand who anonymously defamed the applicant on Glassdoor.com. *Id.* at *1. Glassdoor, Inc. moved to quash the subpoena and contended that the speech was protected by the First Amendment, and that Zuru had not provided "a real evidentiary basis" as required by *Highfields*. *Id.* at *4. The *Zuru* court stated that:

22
23
24
25
26

> "Courts use the 'real evidentiary basis' standard to protect First Amendment rights. But the Anonymous Individuals here, the anonymous reviewers, don't have those rights. They worked for *Zuru* in New Zealand, and there's no reason to believe they were U.S. citizens.' '[F]oreign citizens outside U.S. territory do not possess rights under the U.S. Constitution,' including under the First Amendment."

27
28

*24-mc-80152-EJD*
**Opposition to Non-Party Google LLC's Motion to Quash Subpoena**

*Id.* at \*5. The *Zuru* court further considered the U.S. policy arguments advanced by the movant, but found those policy arguments unpersuasive, and decided that *Highfields* is not applicable because the proposed defendants have no First Amendment rights. *Id.* at \*5-6.

The *Zuru* court's analysis is well reasoned and persuasive, and all courts in this district that have addressed the same issue have agreed with the *Zuru* court. *See, e.g., In re Takada*, 2023 WL 1442844, at \*5; *hey, inc. v. Twitter, Inc.*, Case No. 22-mc-80034-DMR, 2023 WL 3874022, at \*3-5 (N.D. Cal. Jun. 6, 2023). Therefore, First Amendment protections are inapplicable or should not be afforded to the Anonymous Individual.

Where the First Amendment is not implicated, discovery is appropriate if the Applicant can satisfy the good cause standard under Rule 26(d) of the Federal Rules of Civil Procedure.

## B.  The Applicant satisfied the good cause standard under Rule 26(d).

Google contends that the Applicant has failed to satisfy the good cause standard under Rule 26(d) of the Federal Rules of Civil Procedure. ECF No. 13, at 17.

Contrary to Google's contention, in the Section 1782 context, the good cause standard under Rule 26(d) is not applicable, because there is no statutory authority requiring the good cause standard to be applied. *See In re Takada*, 2023 WL 1442844, at \*5 (requiring showing of "good cause" does not have clear support in the language of the Section 1782). Therefore, this Court should follow the *Zuru* court's approach of "taking a peek at the merits" and consider the Applicant's allegations and determine whether they could support a defamation claim in the Republic of Korea, which approach has been accepted by other courts in this district. *Zuru*, 2022 WL 2712549, at \*2-3; *see, e.g., In re Takada*, 2023 WL 1442844, at \*5.

Nonetheless, if this Court determines that the good cause standard applies to this Case, contrary to Google's contention, the Applicant satisfies all four factors of the good cause standard.

First, the Applicant specifically identified the Anonymous Individual by a website address at which the Anonymous Individual, who is a YouTube and Google account holder, published the YouTube Video, and the date that the YouTube Video was published. ECF No. 1-1, ¶ 7; 2d Kim Decl. ¶ 5, Ex. 1; *see Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at \*4 (applicant demonstrated

that the Anonymous Individual is a real person or entity subject to suit by identifying the website address of the Anonymous Individual's account and the date of the speech).

Second, because Korean courts lack jurisdiction over Google, which is headquartered in Mountain View, California, there are no legal procedural methods to identify the Anonymous Individual under the laws of the Republic of Korea, and the only means by which the Applicant can identify the Anonymous Individual is through discovery from Google in the United States. ECF No. 1-2, ¶¶ 6, 13, 16, Ex. 1.

Third, the Civil Case in Korea will withstand a motion to dismiss, because Paster Kim can make out a *prima facie* case as discussed in Section V.C, *infra*. Google argues that the Applicant has failed to provide evidence of the alleged reputational, psychological, and emotional harm that the YouTube Video has caused him. ECF No. 13, at 19. However, as explained in Section V.C.2(c), *infra*, the Applicant has explained the injuries and actual damage that has been caused to him because of the YouTube Video. ECF No. 1-1, ¶¶ 15-17, 24; 2d Decl. Kim ¶¶ 6-20; Jung Decl. ¶¶ 10-25. Google also argues that the Applicant has failed to demonstrate that anyone from the Life Word Mission community actually watched the YouTube Video. ECF No. 13, at 19. The Applicant has submitted the Declaration of Jongguk Jun, a believer and employee of Life Word Mission, which shows that other believers have watched the YouTube Video and recognize that the YouTube Video concerns the Applicant. Jung Decl. ¶¶ 10-12; ECF No. 1-1, ¶¶ 4, 27-28, Exs. 2-3. Google argues that the discovery should not be authorized because it is based upon the premise that "*some* viewers of the YouTube video who are familiar with the Life Word Mission pastor *might* infer that the allegations made in the YouTube vide were about Applicant". ECF No. 13, at 19. As shown above, many believers of Life Word Mission have actually seen the YouTube Video, and those believers easily recognized that the YouTube Video concerns the Applicant. Jung Decl. ¶¶ 10-12; ECF No. 1-1, ¶¶ 4, 27-28, Exs. 2-3. The YouTube Video is not simply stating that some unknown pastor sexually assaulted someone somewhere. Instead, the YouTube Video gives specific facts that (i) the pastor is a "name most people in Life Word known by heart"; (ii) the pastor "spent many years in missionary work overseas and served as the general pastor in charge

*24-mc-80152-EJD*
**Opposition to Non-Party Google LLC's Motion to Quash Subpoena**

in that country; and (iii) the pastor's "offspring getting married within the church". ECF No. 1-1, ¶¶ 25-26. There are only two general pastors returning to Korea from overseas missionary work, and the Applicant is the one whose daughter got married recently. *Id.* ¶ 27. Therefore, the YouTube Video provides sufficient facts for "most people in Life Word" to identify the pastor, which is exactly what happened. Jung Decl. ¶¶ 10-12, 18, 23-24.

Fourth, the Applicant has demonstrated that there is a reasonable likelihood of being able to identify the Anonymous Individual through discovery, because the subpoena served upon Google seeks PII of the Anonymous Individual's YouTube and Google accounts. ECF No. 1, Ex. A; *see Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *4 (applicant satisfied the fourth requirement because the subpoena seeks identifying information for the user of the subject account). Therefore, the Applicant satisfied all four factors of the good cause standard.

**C.    Even if the First Amendment might protect what is entirely foreign speech in this Case, the Applicant satisfied the *Highfields* test because the Applicant made out a *prima facie* case with competent evidence, and the magnitude of the harms tilts in favor of the Applicant.**

Google contends that the Applicant failed to satisfy the *Highfields* test.  ECF No. 13, at 16-17; *Highfields Capital Mgmt. L.P. v. Doe*, 385 F. Supp. 2d 969, 974 (N.D. Cal. 2005). However, the *Highfields* test is inapplicable in this Case, which involves entirely foreign speech, because the *Highfields* test balances the rights of anonymous speakers for the purpose of the First Amendment. *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *3; *Zuru, Inc.*, 2022 WL 2712549, at *5, 5 n.6. As explained in Section V.A, *supra*, the First Amendment is inapplicable in this Case. Courts in this district have previously held that a merits analysis is not required in the context of Section 1782 discovery of a foreign anonymous person's identity and that *Highfields'* "real evidentiary basis" standard is inapplicable in the Section 1782 context. *Zuru, Inc.*, 2022 WL 2712549, at *1-2, 6; *In re Takada*, 2023 WL 1442844, at *5.

However, even if the First Amendment might even remotely protect what is entirely foreign speech in this Case, the Applicant satisfied the *Highfields* test.

> *1.    If the First Amendment might protect what is entirely foreign speech in this Case, then the*

*24-mc-80152-EJD*
*Opposition to Non-Party Google LLC's Motion to Quash Subpoena*

> *Highfields* standard would be appropriate
> because the YouTube Video is commercial speech.

"If an applicant satisfies all four good cause factors, the court must then consider the potential chilling effect on First Amendment rights of ordering disclosure of an anonymous speaker's identity." *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *3. "Courts have adopted a variety of standards to benchmark whether an anonymous speaker's identity should be revealed." *Id.* (*citing In re Anonymous Online Speakers*, 661 F.3d 1168, 1175 (9th Cir. 2011)). "In choosing the proper standard 'by which to balance the rights of anonymous speakers,' the Ninth Circuit has suggested that courts focus on 'the nature of the speech.'" *Id.* "A more rigorous standard may be applicable where the speech at issue is political, religious, or literary, while commercial speech 'should be afforded less protection.'" *Id.* The specific circumstances surrounding the speech serve to give context to the balancing exercise. *Id.* In this case, the YouTube Video insults the Applicant, accuses the Applicant of a sexual crime, accuses the Applicant of committing a sin, and accuses the Applicant of committing a fraud, which fall into the category of commercial speech. ECF No. 1-1, ¶¶ 18-23; *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *4 (anonymous criticism was commercial speech). Accordingly, the test in *Highfields* would be applicable under these circumstances. *Highfields Capital Mgmt. L.P.,* 385 F. Supp. 2d at 975-76.

"Under the *Highfields* standard, the moving party 'must adduce *competent evidence* – and the evidence [the moving party] adduces must address all of the inferences of fact that [it] would need to prove in order to prevail under at least one of the causes of action [it] asserts.'" *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *4 (citing *Highfields Capital Mgmt. L.P.*, 385 F. Supp. 2d at 975-76) (alterations in original). "If the moving party meets its initial burden, the court must then 'assess and compare the magnitude of harms that would be caused to the competing interests by a ruling in favor of' the applicant and the Anonymous Individual." *Id.*

> 2. *The Applicant adduced competent evidence addressing all of the inferences of fact that would need to be proven in order to prevail in the civil lawsuit under the law of Korea.*

Under the *Highfields* standard, the Applicant adduced competent evidence, and that evidence addresses all of the inferences of fact that the Applicant would need to prove in order to

prevail under at least one of the causes of action he asserts. *Id.* at \*4; *Silverman v. Mendiburu*, 785 F. App'x 460 (9th Cir. 2019) (a "declaration, signed under penalty of perjury" constitutes "competent evidence" sufficient even to withstand summary judgement).

The Applicant has filed the Civil Case against the Anonymous Individual in the Republic of Korea for defaming and insulting the Applicant under Articles 750 and 751 of the Civil Act of the Republic of Korea. ECF No. 1-1, ¶ 29; ECF No. 1-2, ¶ 7.

For purposes of this Opposition, the Applicant will only address the reputational tort, i.e., the defamation cause of action. Article 750 concerns torts generally and Article 751 is a special provision that allows for defamation or other mental distress to be compensated monetarily. Second Declaration of Kyongsok Chong (hereinafter "**2d Chong Decl.**") ¶ 6, Sept. 24, 2024. The elements of a tort under Article 750 of the Civil Act of the Republic of Korea are: (a) an unlawful act; (b) done intentionally or negligently; (c) an injury; and (d) causation between the unlawful act and the injury. ECF No. 1-2 ¶ 11; 2d Chong Decl. ¶¶ 7, Ex. 1; Third Declaration of Kyongsok Chong (hereinafter "**3d Chong Decl.**") ¶ 4, Ex. A, Sept. 24, 2024. The Applicant satisfied all of the elements of defamation.

### (a)   The YouTube Video is an unlawful act.

Under the law of the Republic of Korea, where a statement in public by a person lowers another person's social objective reputation, the statement is an unlawful act, *id. est.*, a defamation, if (i) the statement is making a factual assertion, or (ii) the statement is an opinion or a comment based upon underlying facts. 2d Chong Decl. ¶ 9, Ex. 2; 3d Chong Decl. ¶ 5, Ex. B.

The Anonymous Individual makes false factual assertions in the YouTube Video that the Applicant sexually assaulted a sister, drank alcohol (which is a sin under the teachings of Life Word Mission), and committed a secret fraud. ECF No. 1-1, ¶ 19, 21-22; ECF No. 1-3, ¶ 5, Ex. B. Religious leaders committing sexual crimes is a serious problem around the world, and being accused of such a sexual crime is a serious accusation against a religious leader in the Republic of Korea. 2d Chong Decl. ¶ 11. Accusations that a Pastor committed a sin and committed fraud are also serious accusations that would harm a Pastor's reputation within the religious community. Therefore, these assertions are false factual assertions that lower the Applicant's social objective

reputation, especially the Applicant's social and religious reputation as a Pastor. 2d Chong Decl. ¶¶ 10, 12. Therefore, the YouTube Video is an unlawful act and the Applicant satisfies the first element of a reputational tort under the laws of the Republic of Korea. 2d Chong Decl. ¶ 13.

Additionally, because the YouTube Video accuses the Applicant of committing the crimes of sexually assaulting a sister and committing fraud, the defamation in this Case is part of the four categories traditionally recognized in the United States as constituting defamation *per se*.

Therefore, the YouTube Video is an actionable, false, and defamatory statement, for which no First Amendment protection should be afforded.

### (b)   The Anonymous Individual's unlawful act was done intentionally.

Under the laws of the Republic of Korea, intent or negligence is rarely an issue in cases involving online reputational torts, because the relevant intent or negligence is whether the speaker intentionally or negligently published the unlawful statement. 2d Chong Decl. ¶ 14. Under the laws of the Republic of Korea, the intent element is satisfied by simple recognition by the speaker of the fact that the statement is false and that the statement will lower a person's social reputation. *Id.* ¶ 15. Because the YouTube Video would not have been published by the Anonymous Individual without intent to publish, the fact that the YouTube Video was published is sufficient proof of intent, and the falsity of the statements contained in the YouTube Video is proof that the purpose of the Speaker was to lower the Applicant's social objective reputation. *Id.* ¶ 16; ECF No. 1-1, ¶¶ 19, 21-22.

Therefore, because the Anonymous Individual intentionally published the YouTube Video, and because the statements contained in the YouTube Video are false, the Applicant satisfies the second element of a reputational tort under the laws of the Republic of Korea. *Id.* ¶ 17.

### (c)   The Applicant has suffered an injury.

Damage in the form of impairment of reputation, personal humiliation, and mental anguish are injuries for purposes of a reputational tort under the laws of the Republic of Korea as provided in Article 751. ECF No. 1-2, ¶ 9-10; 2d Chong Decl. ¶ 18. Under the laws of the Republic of Korea, even where a monetary value of the damages is not proven, a Judge in a civil case in the Republic of Korea will determine the amount of damages considering comprehensively factors such as the

Page **17** of **23**

relationship of the tortfeasor and the victim, motivation of the defamation, the method and period of defamation, the method and period of defamation, the victim's mental distress and damages, and measures that the tortfeasor takes to restore the victim's reputation. 2d Chong Decl. ¶ 19, Ex. 3; 3d Chong Decl. ¶ 6, Ex. C.

The Applicant is a well respected Pastor, known for his human rights work, his faith, and for being kind and bright. Jung Decl. ¶¶ 4-9. The YouTube Video has harmed the Applicant's good name within the community, and has injured the Applicant both mentally and psychologically, whereby the Applicant is suffering from immense stress, he feels helpless because his name continues to be tarnished with him unable to do anything about it, he has been diagnosed with depression, he cannot go to crowded places due to the humiliation and fear, he is getting flashbacks when delivering sermons at the church, he is devastated because believers have stopped their belief in the teachings of the church because of the accusations, his reputation has been tarnished within the church community, he is suffering from insomnia, and he fears that he will need to quit his job because of the accusations. ECF No. 1-1, ¶¶ 15-17, 24; 2d Decl. Kim ¶¶ 6-20; Jung Decl. ¶¶ 10-25.

Therefore, because the Applicant's reputation has been impaired, the Applicant has experienced personal humiliation, and the Applicant has suffered mental anguish among the various injuries that the YouTube Video has caused to the Applicant, the Applicant satisfies the third element of a reputational tort under the laws of the Republic of Korea. *Id.* ¶ 20.

Under the United States Constitution, for the Applicant to survive Constitutional muster, he must at least show actual damage. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-50, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). "[A]ctual damage is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Id.* at 350. "There need be no evidence which assigns an actual dollar value to the injury." *Id.* Therefore, the Applicant will survive Constitutional muster, because the Applicant has shown actual damage in the form of at least impairment of reputation, personal humiliation, and mental anguish. ECF No. 1-1, ¶ 15-17, 24; 2d Kim Decl. ¶¶ 6-20; Jung Decl. ¶¶ 10-25; *Gertz*, 418 U.S. at 349-50; *see* 1 Rodney A. Smolla, *Law of Defamation* § 7:7 (2d ed. 2021) ("No Supreme Court opinion has ever required special harm in any defamation case. When special harm is mandated in

a case it is purely a requirement of state law."); *Silverman*, 785 F. App'x 460 (9th Cir. 2019) (a "declaration, signed under penalty of perjury" constitutes "competent evidence" sufficient even to withstand summary judgement).

The lowering of a plaintiff's reputation is allowed as actual damage in the United States as well, whereby the Supreme Court of New Jersey has stated "[o]ther damages include the loss of one's good name inflicted by the defamatory publication to third parties, and the anguish and humiliation that flows from a communication that, history and experience teach, will dimmish one's good name." *W.J.A. v. D.A.*, 43 A.3d 1148 (N.J. 2012) (*citing Rocci v. Ecole Secondaire Macdonald-Cartier*, 755 A.2d 583 (N.J. 2000) (*quoting Gertz*, 418 U.S. at 350).

Google argues without authority that "Applicant offers no evidence of the harm or damage the video has caused him by, e.g., identifying specific tangible consequences he suffered." ECF No. 13, at 16. Contrary to Google's contention, as explained above, the Constitution only requires "actual damage", and does not require "tangible consequences", which is a requirement under state law. *Gertz*, 418 U.S. at 350 ("[A]ctual damage is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering."); *see* 1 Rodney A. Smolla, *Law of Defamation* § 7:7 (2d ed. 2021) ("No Supreme Court opinion has ever required special harm in any defamation case. When special harm is mandated in a case it is purely a requirement of state law."). As explained above, the Applicant has shown actual damage, and therefore meets the requirements under the Constitution.

Therefore, the Applicant satisfies the third element of a reputational tort under the law of the Republic of Korea because he has shown injury, and the Applicant further will survive United States Constitutional muster because he has shown actual damage.

**(d)   There is causation between the YouTube Video and the injuries suffered by the Applicant.**

Under the laws of the Republic of Korea, generally, in order to impose liability for damages due to an illegal act, there must be a causal relationship between the illegal act and the damage suffered by the plaintiff, and the presence or absence of a causal relationship must be determined by comprehensively considering the likelihood of the occurrence of the result, the nature of the illegal act, and the nature of the interests infringed. 2d Chong Decl. ¶ 21. However, under the laws

*24-mc-80152-EJD*
**Opposition to Non-Party Google LLC's Motion to Quash Subpoena**

of the Republic of Korea, in the context of defamation, civil courts in the Republic of Korea do not require any special proof of a causal relationship between the defamatory statement and the injury. *Id.* ¶ 21. Nonetheless, the Applicant's injuries have directly resulted from the YouTube Video. 2d Chong Decl. ¶ 22; ECF No. 1-1, ¶ 15-17, 24; 2d Kim Decl. ¶¶ 6-20; Jung Decl. ¶ 10-25. Therefore, the Applicant satisfies the fourth element of a reputational tort under the laws of the Republic of Korea. 2d Chong Decl. ¶ 22.

Based upon the foregoing, the Applicant has satisfied the first-prong of the *Highfields test*, because the Applicant will be able to make out a *prima facie* case for a reputational tort under Articles 750 and 751; the Applicant has adduced competent evidence; and, the evidence adduced addresses all of the inferences of fact that the Applicant would need to prove in order to prevail under Articles 750 and 751. *Id.* ¶¶ 24-26; *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at \*4; *Silverman*, 785 F. App'x 460 (9th Cir. 2019) (a "declaration, signed under penalty of perjury" constitutes "competent evidence" sufficient even to withstand summary judgement).

### (e) The Anonymous Individual will fail to prove the applicable affirmative defense.

A defendant in a civil case in the Republic of Korea can avoid liability by raising and proving the affirmative defense, provided for in Article 310 of the Criminal Act of the Republic of Korea, which is applied *mutatis mutandis* in civil reputational tort cases. 2d Chong Decl. ¶¶ 27-28. The elements of the affirmative defense under Article 310 of the Criminal Act are: the factual assertion (1) is true, (2) is solely for the benefit of the public, and (3) there is a reasonable reason that the speaker believes that the facts are true. *Id.* ¶ 29, Ex. 4; 3d Chong Decl. ¶ 7, Ex. D. Where the defendant can prove all of the above elements, the factual assertion is not unlawful. 2d Chong Decl. ¶ 30.

The affirmative defense is required to be raised and proven by the defendant, and therefore, the Applicant, as a plaintiff, would not be required to prove it. *Id.* ¶ 31.

Nonetheless, even if the Anonymous Individual were to assert the affirmative defense, the Anonymous Individual will fail to prove the first element of the affirmative defense because the Anonymous Individual's assertion is plainly false. *Id.* ¶ 32; ECF No. 1-1, ¶ 19, 21-22. In addition, the Anonymous Individual will fail to prove the second and third elements because the YouTube Video will not be considered to be solely for the benefit of the public because the YouTube Video

falsely accuses the Applicant of various unlawful and criminal acts without any factual evidence, and because the YouTube Video is plainly false there cannot be a reasonable reason that the Anonymous Individual believes to be true. *Id.* ¶ 33. As an example, a reasonable reason under the laws of the Republic of Korea would be a legal document stating the facts of the accused crimes; however, no such document exists, because the facts stated are simply and plainly false. *Id.* ¶ 34.

Based upon the above, the Anonymous Individual will fail to prove the affirmative defense, and therefore, the YouTube Video will be considered unlawful. *Id.* ¶ 35.

### 3.      The magnitude of harms tilts in favor of the Applicant.

If the Applicant meets his initial burden, the court must then assess and compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of the Applicant or in favor of the Anonymous Individual. *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *4.

The Applicant has suffered severe emotional and mental harm, he has been humiliated, he is suffering from insomnia for months, his reputation has been tarnished by the false accusations, and he is on the verge of losing his job, all because of the false defamatory statements contained in the YouTube Video. ECF No. 1-1, ¶¶ 15-17, 24; 2d Kim Decl. ¶¶ 6-20; Jung Decl. ¶¶ 10-25. Unless the Applicant is allowed to clear his name through the Civil Case, the Applicant will continue to be damaged and his name plagued by the falsities contained in the YouTube Video, which falsities consist of accusations that the Applicant sexually assaulted a member of his religious group, committed fraud, and committed a sin, all acts that constitute defamation *per se* in the United States. If the Applicant is unable to clear his name, the Applicant will likely be forced to quit as a pastor, taking away the Applicant's livelihood and destroying the Applicant's career that he has built over many years. 2d Kim Decl. ¶¶ 7, 15-16. That defamation is a "dignitary tort," *Rocci*, 755 A.2d at 592 (O'Hern, J., dissenting), is not a matter of dispute. *W.J.A.*, 43 A.3d at 1159. Therefore, this Court should allow the Applicant the discovery to identify the Anonymous Individual in order for the Applicant to proceed with the Civil Case for the loss of his good name inflicted by the false and defamatory YouTube Video.

Google argues that the potential harm to the Anonymous Individual "would be violating their constitutional rights, disclosing their identity, and exposing the user to potential civil damages

claims in Korea as aa consequence of posting a video that purports to expose a pastor of a Korean churh for assaulting another community member." ECF No. 13, at 17. As explained *supra*, the Anonymous Individual does not have any constitutional First Amendment rights because the Anonymous Individual is a foreign national that was speaking in a foreign country. Additionally, as explained *supra*, even if the Anonymous Individual had any First Amendment rights, false defamatory factual accusations that the Applicant committed crimes and a sin are not speech protected by the First Amendment. As for the disclosure of the identity of the Anonymous Individual, that will not weigh in favor of the Anonymous Individual because of the unlawful nature of the YouTube Video, and the necessity of the PII in order for the Applicant to proceed with the Civil Case. As for the Anonymous Individual being subject to potential civil damages in Korea, that is also not a harm that would weigh in favor of the Anonymous Individual, because that is simply a legal consequence of the unlawful acts of the Anonymous Individual.

Google argues that, even if the Applicant cannot obtain the PII from Google, the Applicant may still investigate the identity of the anonymous through the Korean legal system, and will not be prevented from proceeding with the Civil Case. ECF No. 13, at 17. Contrary to Google's argument, there simply are no means under the laws of the Republic of Korea for the Applicant to investigate or discovery the true identity of the Anonymous Individual, because Korean courts lack jurisdiction over Google, and without the requested PII, the Civil Case cannot proceed. ECF No. 1-2, ¶¶ 15-16. Google has failed to explain how the Applicant will be able to investigate the true identity of the Anonymous Individual, or how the Applicant will be able to proceed with the Civil Case without the PII.

If the subpoena is quash, the Applicant will be unable to proceed with the Civil Case, and as a result, the Applicant's reputation will remain tarnished within his church community, he will continue to suffer emotionally, mentally, and psychologically, he will continue to be humiliated, and he will likely be forced to quit his job as a Pastor, all while the Anonymous Individual who is spreading falsities is allowed to hide behind his anonymity.

For the above reasons, because the harm caused to the Applicant is significant and the harm caused to the Anonymous Individual is either minimal or does not exist, the harms tilt in favor of the Applicant.

*24-mc-80152-EJD*
**Opposition to Non-Party Google LLC's Motion to Quash Subpoena**

1

## VI.   CONCLUSION

2

Based upon the foregoing, the YouTube Video is not protected by the First Amendment,

3
and the Applicant satisfied the four-part good cause standard. Even if the YouTube Video is

4
protected by the First Amendment, the Applicant has satisfied the two-prong *Highfields* test.

5
Therefore, Google's motion to quash the subpoena should be denied, and Google should be

6
ordered to provide the requested discovery.

7
Dated: September 23, 2024.

8

9
_____/s/  Carlos Makoto Taitano_____

10
CARLOS MAKOTO TAITANO
Attorney for Applicant
Ho Chan Kim

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*24-mc-80152-EJD*
*Opposition to Non-Party Google LLC's Motion to Quash Subpoena*