Nicholas O. Kennedy (State Bar No. 280504)
nicholas.kennedy@bakermckenzie.com
**BAKER & McKENZIE LLP**
1900 North Pearl Street, Suite 1500
Dallas, TX 75201
Telephone:    214 978 3081
Facsimile:    214 978 3099

Byron R. Tuyay (State Bar No. 308049)
byron.tuyay@bakermckenzie.com
**BAKER & McKENZIE LLP**
10250 Constellation Blvd., Suite 1850
Los Angeles, CA 90067
Telephone:    310 201 4728
Facsimile:    310 201 4721

Attorneys for Non-Party GOOGLE LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| *In Re Ex Parte* Application of<br><br>HO CHAN KIM,<br><br>Applicant. | Case No. 5:24-mc-80152-EJD<br><br>**NON-PARTY GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA**<br><br>**HEARING DATE: NOVEMBER 14, 2024**<br>**TIME: 9:00 A.M.**<br>**COURTROOM: 4, 5TH FLOOR**<br><br>Judge: The Honorable Edward J. Davila<br>Courtroom 4, 5th Floor<br>San Jose Courthouse<br>280 South First Street<br>San Jose, California 95113 |

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................3

II. ARGUMENT........................................................................................................................4

    A. The Court May Consider First Amendment Implications of the Subpoena Even if Google Does Not Affirmatively Prove the Anonymous User's U.S. Citizenship. ..................................................................................................................4

    B. The evidence does not support a finding that the Anonymous User is a Foreign National or that the Speech was "Entirely Foreign." .......................................5

    C. Zuru and Takada Are Not Dispositive Because There is Reason to Believe the Anonymous User May Be Entitled to First Amendment Protection. ......................6

    D. The Balance of Harm Does Not Tilt in Favor of Applicant. .........................................8

    E. The Applicant's Subpoena Does Not Satisfy the Good Cause Standard........................8

        1. The Good Cause Standard Should Apply Because It Was Not Displaced by the Intel Factors................................................................................................ 9

        2. New allegations of alleged harm still fail to satisfy the third good cause requirement that Applicant shows he can survive a motion to dismiss. ................. 9

III. CONCLUSION...................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Anonymous Online Speakers*,
    661 F.3d 1168 (9th Cir. 2011) ................................................................................................5

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    2013 WL 183944 (N.D. Cal. Jan. 17, 2023) ............................................................................6

*Columbia Ins. Co. v. Seescandy.com*,
    185 F.R.D. 573 (N.D. Cal. 1999) ..........................................................................................11

*Highfields. Highfields Capital Mgmt., L.P. v. Doe*,
    385 F. Supp. 2d 969 (N.D. Cal. 2005) ............................................................................ passim

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ......................................................................................................4, 9, 10

*In re PGS Home Co.*,
    No. 19-mc-80139-JCS, 2019 U.S. Dist. LEXIS 204520 (N.D. Cal. Nov. 19, 2019) ................9

*In re Takada*,
    No. 22-mc-80221-VKD, 2023 U.S. Dist. LEXIS 17159 (N.D. Cal. Feb. 1, 2023) ...........4, 8, 9

*In re Yuichiro Yasuda*,
    No. 19-mc-80156-TSH, 2020 U.S. Dist. LEXIS 26242 (N.D. Cal. Feb. 14, 2020) ................10

*Zuru, Inc. v. Glassdoor, Inc.*,
    614 F. Supp. 3d 697 (N.D. Cal. 2022) ............................................................................ passim

**Statutes**

28 U.S.C. § 1782 ............................................................................................................... passim

**Other Authorities**

First Amendment ................................................................................................................ passim

Fed. R. Civ. 26(d) ........................................................................................................................10

**REPLY BRIEF IN SUPPORT OF GOOGLE'S MOTION TO QUASH**

## I.  INTRODUCTION

Applicant Ho Chan Kim's Opposition to Google's Motion to Quash (ECF 14) seeks to impair the Court's discretion to refuse to authorize discovery under 28 U.S.C. § 1782 from U.S.-based non-parties like Google LLC.  It also infringes important constitutional rights to free speech and anonymous speech.  This violates the law, is bad policy, and should fail.

Applicant asks this Court to unmask an anonymous user of a YouTube account who has consistently accessed that account from the U.S.  The important First Amendment issues this raises should not be simply cast aside as Applicant suggests.  First, Applicant is mistaken that First Amendment protections do not apply to anonymous online speakers absent "clear proof" confirming their U.S. citizenship.  This burden-shifting would give foreign litigants much wider powers than Section 1782 and *Intel* intended.  It would also impose an impractically high burden on Google – forcing Google in every case to pry into its users' citizenship status or disclose personal identifying information based on bare allegations of misconduct and without any legal basis.  Applicant's attempted burden-shifting would also undermine the *Highfields* standard that courts in the Ninth Circuit have adopted to address First Amendment concerns in the Section 1782 context.  Applicant's attempt to re-write settled law and restrain this Court's discretion should be rejected.

Rather than rewrite the law as Applicant suggests, the Court should consider First Amendment protections before ordering Google to identify these anonymous users who may be U.S. citizens and would face potential legal action, intimidation, and harassment if unmasked.  In doing so, the Court should do as many other courts have done and require that Applicant satisfy the "real evidentiary basis" standard as applied in *Highfields* to prevent abuse of Section 1782 and protect the rights of U.S. citizens to anonymity when exercising free speech.

As a result, the Court should quash the Subpoena because the Subpoena raises legitimate First Amendment concerns that justify the Court's analysis under *Highfields*.  The speech at issue is not "entirely foreign," and Applicant's reliance on *Zuru* and *Takada* is inappropriate because those cases did not present any indication that the anonymous user was a U.S. citizen entitled to Constitutional

privileges. On the other hand, this case does present evidence of U.S. presence, invoking Constitutional protection for anonymous online expression and warranting a higher evidentiary burden. Applicant has not satisfied the *Highfields* standard by showing a real evidentiary basis for his defamation claim and the harm caused from infringing upon the user's privilege of anonymity outweighs the alleged harm to Applicant from failing to produce this information. Applicant has not even satisfied the good cause requirement because he cannot show a causal link between the alleged defamation and his injury. Given the circumstances under which this discovery is sought, and that Applicant has no viable claim for defamation, the Court should quash the Subpoena.

## II.   ARGUMENT

### A.   *The Court May Consider First Amendment Implications of the Subpoena Even if Google Does Not Affirmatively Prove the Anonymous User's U.S. Citizenship.*

Applicant argues without citing authority that the Court should not apply the *Highfields* test because (1) Google must offer evidence of the anonymous user's U.S. citizenship and (2) that the speech at issue is "entirely foreign" such that it is outside the scope of First Amendment protections. (*See* Ho Chan Kim's Opposition to Non-Party Google LLC's Motion to Quash Subpoena, ECF No. 14.) Both of these arguments are mistaken.

First, Applicant concedes that U.S. citizens, whether inside or outside U.S. territory, possess First Amendment rights. (Applicant's Opp. at 11); *Agency for Int'l Dev. Alliance for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 222 (2013). Applicant, however, asks the Court to ignore these First Amendment rights because Google "lacks evidence to prove that the anonymous individual is a U.S. citizen." (Applicant's Opp. at 8-9.) But it is not Google's burden to prove citizenship, as it is the *applicants* seeking disclosure that carry the burden to show the discovery they seek is necessary and outweighs Constitutional protections. *See In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (noting that identification is only appropriate where the compelling need for discovery outweighs the First Amendment privilege.) (emphasis added). In other words, Google need not prove an anonymous online user's citizenship before the Court may consider the impact that the Subpoena

may have on a user's First Amendment right to express themselves anonymously. Rather, the Court may consider any circumstances as it deems appropriate when exercising its discretion under Section 1782. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *4 (N.D. Cal. Jan. 17, 2023) (holding that a Special Master did not err in considering factors "he thought appropriate" beyond the *Intel* factors in Section 1782 case.)

Here, the Court may consider that the anonymous user logged in to the account from the U.S., and only inside the U.S., on many occasions going back to January 2024. (ECF 13-1, Declaration of Jordan Zuccarello ¶ 4.) This strongly suggests that this anonymous user is a U.S. citizen. The Court need not go any further because citizenship need not (and likely cannot) be definitively established for an anonymous online user. The IP data suggesting that this user lives in the U.S. and therefore may be entitled to First Amendment protections is all that is necessary to trigger the *Highfields* analysis.

Contrary to Applicant's assertion, Google cannot validate its users' citizenship because it does not require users to disclose their citizenship, nor does Google verify identifying information that is used to create Google accounts. For example, Google does not require users to submit proof of their residency or a government-issued form of identification to ensure the accuracy of the name, date of birth, and location of a user who signs up for a Google account. Verifying an individual user's citizenship would impose a significant burden on Google as this would require not only collecting and storing highly sensitive information regarding users' citizenship status, but also the review and validation of this information or supporting documents before a user can use Google's services. Google, therefore, is unlikely ever to be in a position to oppose a Section 1782 application with definitive proof of a user's U.S. citizenship. (*See* Google's Motion to Quash Subpoena, ECF No. 13.) But that simple reality should not preclude the Court from applying the *Highfields* standard. The pattern of log-in activity associated with the requested account indicates that the Subpoena may violate the anonymous user's First Amendment rights, justifying the higher evidentiary burden of *Highfields*. *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 980 (N.D. Cal. 2005).

**B.     *The evidence does not support a finding that the Anonymous User is a Foreign National or that the Speech was "Entirely Foreign."***

Second, Applicant invites the Court to make the logical leap that the absence of evidence confirming the anonymous user's U.S. citizenship means that the anonymous user must be a foreign national who is not entitled to Constitutional protections. The Court should decline this invitation.

Specifically, Applicant claims that even though the anonymous user's IP addresses show that this individual has been accessing the relevant Google accounts in the U.S. since January 2024, the user could have traveled or used a VPN service. (Applicant's Opp. at 12.) But the converse of this is also true. Applicant could have just as likely been traveling outside the U.S. when the video was posted or used a VPN service to disguise the location as South Korea prior to January 2024. In this way, the timing of the alleged defamatory post relative to the IP data showing log-ins from the U.S. is not determinative of the anonymous user's nationality. Nor does it make the speech "entirely foreign." Many U.S. citizens are capable of writing and speaking Korean. Many U.S. citizens maintain ties through family or other communities in Korea, despite maintaining U.S. citizenship. Many individuals hold dual citizenship. Applicant ignores this reality by characterizing the video as "entirely foreign." To be clear, Google does not (and cannot) assert that the anonymous user is certainly a U.S. citizen. But Google respectfully submits that the evidence here is sufficient to support such a conclusion, thus triggering First Amendment protections.

The fact that the video may have been posted while the anonymous user accessed the YouTube account in Korea does not preclude Constitutional protections. Most directly, this argument contradicts Applicant's concession that "U.S. citizens, whether inside or outside U.S. territory, possess First Amendment rights." (*See* Applicant's Opp. at 11 (quoting *In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corporation dated July 23, 2020*, 337 F.R.D. 639, 649 (N.D. Cal. 2020))). If the anonymous user is indeed a U.S. citizen, then the relevant YouTube video deserves constitutional protections regardless of where the user was when it was posted.

### C. *Zuru* and *Takada* Are Not Dispositive Because There is Reason to Believe the Anonymous User May Be Entitled to First Amendment Protection.

Applicant cites to *Zuru, Inc. v. Glassdoor, Inc.* to claim that this case does not raise First Amendment issues and therefore the *Highfields* test is inapplicable. (Opp. at 11-12 (citing *Zuru*, *Inc.*

*v. Glassdoor, Inc.*, 614 F. Supp. 3d 697 (N.D. Cal. 2022))  Applicant's reliance on *Zuru*, however, is misplaced.  In *Zuru*, a New Zealand based company subpoenaed a workplace review website in the U.S. to unmask former employees who had anonymously posted alleged defamatory reviews about the company.  *Zuru*, 614 F. Supp. at 702.  In finding that the anonymous users in *Zuru* did not have First Amendment rights, the court noted that the anonymous users were former employees who worked in New Zealand and that there was "no reason to believe they were U.S. citizens." *Id.* at 706.

Similarly, in *Takada*, the court reasoned that *Highfields* was inapplicable to foreign nationals and that Courts could not "assume" First Amendment protections apply when there is "no reason to believe that the anonymous poster is a U.S. citizen."  *In re Takada,* No. 22-mc-80221-VKD, 2023 U.S. Dist. LEXIS 17159, at *7 (N.D. Cal. Feb. 1, 2023).  There, the court also noted that the alleged defamatory content was posted in a foreign language, with foreign captions and comments.  *Id.*  As such, the Court found that it was insufficient to infer First Amendment protections for the anonymous user where the content was "merely accessible" to U.S. citizens over the internet, noting that Google "examined its own records and [gave] notice to the anonymous poster, as the Court ordered, [and] identified *no information* suggesting that the anonymous poster might be a U.S. citizen or otherwise entitled to First Amendment protection."  *Id.* at *9 (emphasis added).

That is not the case here.  Unlike these cases, Google and the Court have ample reason to believe that the anonymous user could be a U.S. citizen.  Google, upon examining its records, gave notice to the anonymous user, and—unlike in *Takada*—has identified information suggesting that the anonymous user might be a U.S. citizen.  IP data associated with the anonymous user's YouTube account shows consistent log-ins using U.S.-based IP addresses.  And the content of the alleged defamatory video is not merely accessible to U.S. citizens online, but rather was posted using an account that appears to have recently logged in from within the U.S. territory – a factual distinction that was not present in either *Zuru* or *Takada*.  Moreover, the relevant video does not make clear that the anonymous user resides in Korea or was an actual member of Applicant's Life Word Mission community.  Despite Applicant's assertion, the content of the relevant video is not determinative of the anonymous user's nationality (either as a U.S. or citizen of the Republic of Korea).  Accordingly,

the facts here are distinguishable from *Zuru* and *Takada* and the Court should not expand those rulings to infringe the rights of U.S. citizens who travel abroad or who, due to close ties to communities abroad, may choose to comment online on foreign matters of public importance anonymously.

### D.   *The Balance of Harm Does Not Tilt in Favor of Applicant.*

Finally, Applicant has not met his burden to present competent evidence to show that he has suffered "real harm" as a consequence of this anonymous speech. *See In re PGS Home Co.*, No. 19-mc-80139-JCS, 2019 U.S. Dist. LEXIS 204520, at *5 (N.D. Cal. Nov. 19, 2019) ("A litigant must persuade the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff.") (citing *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 980 (N.D. Cal. 2005)).  The balance of harms weighs heavily in favor of quashing the Subpoena despite what Applicant maintains.  Allowing individuals to file a Section 1782 application to uncover anonymous speaker's identities any time they are criticized or questioned turns the Section 1782 process into a vehicle for harassment and retaliation.  Authorizing the Subpoena curtails the freedom of expression and chills free speech.  On the other hand, quashing the Subpoena creates minimal harm to Applicant.  Although Applicant will be unable to obtain the information he seeks from Google, Applicant may nonetheless investigate the identity of the anonymous user through other means, including the Korean legal system and the investigative processes and publicly available resources available in the Republic of Korea.  Therefore, under *Highfields*, the court should quash the Subpoena because it fails both parts of the test.

### E.   *The Applicant's Subpoena Does Not Satisfy the Good Cause Standard.*

In addition to failing to satisfy the *Highfields* threshold, the Subpoena also fails to satisfy the good cause requirement for expedited discovery requests because Applicant has not taken any steps to identify the information himself and the Subpoena could not withstand a motion to dismiss.  Contrary to Applicant's assertion, the good cause standard is still applicable in the Section 1782 context.  Nothing in *Intel* precludes this application.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 243 (2004).  Furthermore, despite what Applicant argues in his Opposition, the

Subpoena could not withstand a motion to dismiss. Failing to satisfy the good cause standard alone is sufficient to justify quashing the Subpoena.

1. *The Good Cause Standard Should Apply Because It Was Not Displaced by the* Intel *Factors.*

Applicant argues that the Court need not engage in a Rule 26(d) good cause analysis in considering whether to authorize requests for discovery under Section 1782. (Applicant's Opp. at 10.) Nothing in *Intel* has displaced the good cause requirement for expedited discovery requests including uncovering the identity of an anonymous speaker. Indeed, Northern District of California courts have continued to require applicants to show good cause before authorizing the production of identifying information. *See e.g., In re Yuichiro Yasuda*, No. 19-mc-80156-TSH, 2020 U.S. Dist. LEXIS 26242, at *13 (N.D. Cal. Feb. 14, 2020) ("If the foreign litigant asserts that an anonymous speaker's speech is actionable, the First Amendment protects the speaker from being unmasked unless the applicant [can satisfy the four 'good cause' factors].") (listing factors). Therefore, Applicant must satisfy all four factors of the good cause requirement before the Court should authorize the Subpoena and order Google to produce the identifying information. If Applicant cannot satisfy this low burden, then the Court should quash the Subpoena.

2. *New allegations of alleged harm still fail to satisfy the third good cause requirement that Applicant shows he can survive a motion to dismiss.*

Despite Applicant's newest attempt at alleging harm, Applicant still cannot show that the motion could survive a motion to dismiss. Because Section 1782 applicants must satisfy all four factors before the Court can authorize the expedited discovery, this deficiency alone justifies quashing the Subpoena.

To satisfy the "good cause" standard, Applicant must satisfy all four requirements: Whether (1) the plaintiff can identify the missing party with sufficient specificity such that the court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a

reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible. *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999).

Applicant failed to satisfy both the second and fourth good cause factors. Applicant failed to remedy this in his Opposition. For starters, Applicant argued that he was unable to attempt any steps to locate the elusive defendant because "Korean courts lack jurisdiction over Google." (Applicant's Opp. at 18.) But Applicant is not suing Google, where the issue of jurisdiction is relevant. At issue is taking steps to obtain the identifying information of an anonymous speaker. Korea has capable law enforcement, and a sophisticated legal justice system. Applicant has failed to prove that he made any attempt to uncover the anonymous user's identity before turning to the U.S. court for assistance. For this reason, Applicant has failed the second good cause factor.

The Court should also dismiss the Subpoena because Applicant has failed again to show that his case could withstand a motion to dismiss. Applicant provides a declaration providing greater specificity of the alleged harm in his Opposition which still does not satisfy this standard. Specifically, Applicant alleges that upon learning of the YouTube Video, Applicant suffered insomnia for months, was diagnosed with depression caused by the YouTube Video, and was fearful to go to crowded places because he felt humiliated and fearful that people knew about the YouTube video. (*See* Opp. at 8.) These bare assertions still fail to establish that Applicant's Subpoena could withstand a motion to dismiss.

Besides additional allegations of harm, Applicant offers an attorney's affidavit stating that this is sufficient to meet the standard. (Second Declaration of Kyongsok Chong in Support of Ho Chan Kim's Opposition to Non-Party Google LLC's Motion to Quash Subpoena, ECF No. 15.) According to Chong's affidavit, in the context of defamation, civil courts in the Republic of Korea do not require any special proof of a causal relationship between the defamatory statement and the injury. *Id*. ¶ 21. Chong claims that nonetheless, Applicant's alleged injuries have directly resulted from the YouTube Video. *Id*. ¶ 22. Essentially, Applicant's argument boils down to the fact that the video offended him, and he therefore has a claim to defamation. U.S. courts should not reduce the

evidentiary burden to such a minimal pleading to authorize intrusive and burdensome subpoenas such as the one Applicant has served upon Google.

Accordingly, because Applicant cannot satisfy the good cause standard, the Court should quash the Subpoena.

### III.     CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court issue quash the July 9, 2024 subpoena and grant Google any and all further relief to which it is justly entitled.

Dated: September 30, 2024                                    Respectfully submitted,

**BAKER & McKENZIE LLP**

By: */s/ Nicholas O. Kennedy*
　　Nicholas O. Kennedy
　　Attorney for
　　Non-Party GOOGLE, LLC