Carlos Makoto Taitano, State Bar No. 275820
Taitano & Taitano LLP
P.O. Box 326204
Hagatna, Guam 96932
Telephone:     (671) 777-0581
Email:          cmakototaitano@taitano.us.com

*Attorney for Applicant*
*Ho Chan Kim*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| *In re Ex Parte* Application of | ) |
| | )    Case Number: 24-mc-80152-EJD |
| Ho Chan Kim, | ) |
| | ) |
|      Applicant. | )    **HO CHAN KIM'S OPPOSITION TO** |
| | )    **JOHN DOE'S MOTION TO QUASH** |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Table of Contents

**Page**

I.      INTRODUCTION………………………………………………………....…1

II.     STATEMENT OF THE ISSUES TO BE DECIDED…………………………1

III.    STATEMENT OF THE RELEVANT FACTS………………………………2

IV.     LEGAL STANDARD………………………………………………………4

V.      ARGUMENT……………………………………………………………5

    A.      Doe's motion to quash should not be considered because
it appears to have been ghostwritten; if, however, the Court
decides to consider Doe's motion to quash, Doe should not be
afforded the leniency normally afforded to *pro se* litigants…………………..……5

    B.      Doe's motion to quash should be denied because Doe failed to
show that his failure to meet the deadline to file the motion to
quash constitutes excusable neglect……………………………………6

        1.      *First Prong: the danger of prejudice to the Applicant*……………..………8

        2.      *Second Prong: the length of the delay and its potential
impact on the proceedings*…..………………………………9

        3.      *Third Prong: the reason for the delay*…………………………9

        4.      *Fourth Prong: whether the movant acted in good faith*…………………9

    C.      Doe's speech is not protected by the First Amendment because
Doe is not a United States citizen, the speech was published in
a foreign country, and the speech is directed towards a foreign
audience……………………………………………………………....10

        1.      *No First Amendment rights apply to Doe, who is not a
United States citizen, and who published the YouTube
Video in Korea in the Korean language directed
towards a Korean audience.*…………………….…………….……10

        2.      *The YouTube Video was published in Korea and was
not directed to the United States.*……………………………………12

    D.      Doe's assertion that he will be exposed to potential retaliation
lacks any basis in fact………………………….….………………………13

    E.      The Applicant did not fabricate any evidence or mislead the Court……………14

    F.      Doe intended to target the Applicant and viewers of the
YouTube Video clearly understood the YouTube Video to be
targeting the Applicant……………………………………………………....15

*Page i of iv*

**Case No. 24-mc-80152-EJD**
**Opposition to John Doe's Motion to Quash**

**Table of Contents**

Page

     G.     Doe was not creating YouTube videos with English subtitles
            on or before the publication of the YouTube Video…………………………..16

VI.     CONCLUSION……………………………………………………...……………17

*Case No. 24-mc-80152-EJD*
*Opposition to John Doe's Motion to Quash*

**Table of Authorities**

**Page(s)**

**Cases**

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*,
   570 U.S. 205 (2013)…………………………………………………....10,13

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*,
   591 U.S. 430 (2020)……………………………………………………10

*Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253 (9th Cir. 2010)……………………………5,7

*CPC Patent Technologies Pty Ltd. v. Apple, Inc.*, 34 F.4th 801 (9th Cir. 2022)………………6

*Escamilla v. Miranda*, Case No. 23-cv-05033-BLF,
   2024 WL 390071 (N.D. Cal. Jan. 31, 2024)………………………6

*Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001)……………………………………...8

*Flynn v. Love*, 3:19-CV-00239-MMD-CLB,
   2023 WL 2561158 (D. Nevada Mar. 16, 2023)…………………………………5,6

*Free Speech Coalition, Inc. v. Paxton*, 95 F.4th 263 (5th Cir. 2024)…………………………....11

*Free Speech Coalition, Inc. v. Paxton*, 144 S.Ct. 2714 (2024)…………………………………11

*In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corporation
   dated July 23, 2020*, 337 F.R.D. 639 (N.D. Cal. 2020)……………...……………10,11,13

*Khrapunov v. Prosyankin*, 931 F.3d 922 (9th Cir. 2019)……………………………...…………6

*Kleindienst v. Mandel*, 408 U.S. 753 (1972)……………………………………………………12

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990)…………………………………………...7

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
   507 U.S. 380 (1993)………………………………………………………5,6,7

*Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213 (D. Haw. 2010)……………………………6

*TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691 (9th Cir.2001) ……………………………8

*Thompson v. American Home Assur. Co.*,
   95 F.3d 429 (9th Cir.1996)…………………………………………...…8

*Thunder Studios, Inc. v. Kazal*, 13 F.4th 736 (9th Cir. 2021)…………………………………12,13

*Walker v. Pacific Maritime Assoc.*, Case No. C07-3100 BZ,
   2008 WL 1734757 (N.D. Cal. Apr. 14, 2008)…………………………………5

*Watchtower Bible & Tract Soc'y of New York v. Village of Stratton*,
   536 U.S. 150 (2002)………………………………………………………10

*Page iii of iv*

**Case No. 24-mc-80152-EJD**
**Opposition to John Doe's Motion to Quash**

## Table of Authorities

**Page(s)**

**Cases**

*Zuru, Inc. v. Glassdoor, Inc.*,
    614 F. Supp. 3d 697 (N.D. Cal. 2022)…………………………………..…………10

**Rules**

Fed. R. Civ. P. 6(b)(1)(B)……………………………………………….……..……6,7

Fed. R. Civ. P. 45(d)(3)(A)(iii)…………………………………….……………....…..5

Civil L.R. 7-3(a)………………………………………………………………...9

**Case No. 24-mc-80152-EJD**
**Opposition to John Doe's Motion to Quash**

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Applicant Ho Chan Kim (hereinafter "**Applicant**") filed, on June 20, 2024, his <u>Ex Parte</u> Application for Order Pursuant to 28 U.S.C. § 1782 Authorizing Discovery for Use in Foreign Proceedings (hereinafter "**Application**") requesting limited discovery from Google LLC (hereinafter "**Google**") to aid foreign proceedings in the Republic of Korea.

The Applicant is seeking to unmask the true identity of an anonymous YouTube user (hereinafter "**Doe**") who published an insulting, false, and defamatory YouTube video (hereinafter "**YouTube Video**") concerning the Applicant on Doe's YouTube channel (hereinafter "**YouTube Channel**").

The Applicant has filed a civil lawsuit against Doe in the Republic of Korea.

Contrary to Doe's contention, First Amendment protections are inapplicable to Doe and the speech which is the YouTube Video, because Doe published the YouTube Video when he was physically in the Republic of Korea; the YouTube Video is in the Korean language and directed towards a Korean audience; and, Doe is likely not a United States citizen because he has failed to provide evidence that he is a United States citizen, and in fact, implicitly admits that he is not a United States citizen. Therefore, First Amendment protections are inapplicable in this Case, because Doe and the YouTube Video lack any U.S. connection.

Therefore, the Applicant respectfully requests that the Court deny Doe's motion to quash the subpoena, and order Google to provide the information requested in the subpoena so that the Applicant can identify Doe in order for the Applicant to proceed with his civil lawsuit in the Republic of Korea.

## II.    STATEMENT OF THE ISSUES TO BE DECIDED

1.    Whether excusable neglect existed for Doe's late filing of his motion to quash.

2.    Whether the YouTube Video is speech protected under the First Amendment, although Doe is not a United States citizen.

//

Page **1** of 17

*Case No. 24-mc-80152-EJD*
*Opposition to John Doe's Motion to Quash*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.    STATEMENT OF THE RELEVANT FACTS

The Applicant is a Korean national who resides in the Republic of Korea, and is a Pastor in the Republic of Korea at Life Word Mission, which is a South Korean Christian religious mission. ECF No. 1-1, ¶¶ 2-3; ECF No. 14-1, ¶ 3. The Applicant has been living and dedicating his life to his faith. ECF No. 14-1, ¶ 6. The Applicant has built up his reputation as a Pastor over many years, and is well reputed within the community. *Id.* ¶ 7; ECF 14-4, ¶¶ 5-9.

On January 3, 2024, Doe published the insulting, false, and defamatory YouTube Video concerning the Applicant. ECF 14-1, ¶ 5, Ex. 1; ECF No. 1-1, ¶¶ 7, 13-28, Exs. 1-3. In addition to insulting the Applicant, the YouTube Video falsely accuses the Applicant of sexually assaulting a local sister, drinking alcohol which is a sin under the teachings of Life Word Mission, and committing a secret fraud. ECF No. 1-1, ¶¶ 18-23.

When the Applicant first learned about the YouTube Video, the Applicant was shocked that he was being falsely accused of sexually assaulting a sister, committing the sin of drinking alcohol, and committing fraud, and he was shocked at the extremely hateful speech that was being directed toward him. ECF No. 14-1, ¶ 8. Since learning of the YouTube Video, the Applicant has been under immense stress, and because of the stress, the Applicant has been suffering from insomnia for months and was diagnosed with depression caused by the YouTube Video. ECF No. 1-1, ¶ 16; ECF No. 14-1, ¶ 10. The Applicant has been unable to go to crowded places because he feels humiliated and fearful that people may know about the YouTube Video. ECF No. 14-1, ¶ 11. The Applicant feels as though others are blaming him of the despicable acts that he is being accused of committing. *Id.* ¶ 12. Whenever the Applicant delivers sermons and sees believers watching their smartphones, he gets flashbacks of the YouTube Video, which causes him to be in fear that the believers are watching the YouTube Video. *Id.* ¶ 13. The Applicant has learned that many believers are losing their faith because of the accusations against him contained in the YouTube Video, which has devastated the Applicant both mentally and emotionally. *Id.* ¶ 14. Since the YouTube Video was published, the number of believers attending the Applicant's sermons has decreased, which has also devastated the Applicant. *Id.* ¶ 17.

*Case No. 24-mc-80152-EJD*
*Opposition to John Doe's Motion to Quash*

1    Numerous Life Word Mission believers have also viewed the YouTube Video, have

2  identified the YouTube Video to concern the Applicant, and have expressed concern about the

3  Applicant and what is being stated within the YouTube Video, which has significantly harmed the

4  Applicant's good name within the community. ECF No.14-4, ¶¶ 10-25. The Applicant is

5  considering quitting his job as a Pastor because of the fear, stress, humiliation, and harm that the

6  YouTube Video is causing to both him and to other believers, and is only persevering with prayers

7  and with the help of his faith. ECF No. 14-1, ¶ 15. If the Applicant is unable to clear his reputation

8  through his civil lawsuit, the Applicant will be forced into quitting his job. *Id.* ¶ 16. The Applicant

9  has felt helpless for months, unable to do anything to clear his reputation, while Doe hides behind

10  his anonymity avoiding any accountability for his insults and falsehoods. *Id.* ¶ 18. Although it may

11  harm the Applicant's reputation as a Pastor, the Applicant has been consulting a psychiatrist

12  recently because his symptoms of mental distress, insomnia, and stress caused by the YouTube

13  Video have worsened significantly, whereby he is no longer able to handle it on his own, and he

14  require professional assistance. Third Declaration of Ho Chan Kim (hereinafter "**3rd Kim Decl.**")

15  ¶ 11, Nov. 20, 2024.

16    The Applicant has filed a civil lawsuit against Doe in the Suwon District Court, Anyang

17  Branch Court, in the Republic of Korea, Civil Case Number 2024Gaso117176, for defamation and

18  insulting (hereinafter "**Civil Case**"). ECF No. 1-1, ¶ 29. However, the Applicant has been unable

19  to identify the true identity of Doe, preventing him from proceeding with the Civil Case against

20  Doe. *Id.* ¶ 30.

21    The Applicant is unable to identify Doe because Korean courts lack jurisdiction over

22  Google which is head quartered in Mountain View, California. ECF No. 1-2, ¶¶ 6, 13-16.

23    The Applicant filed the Application to obtain personal identifying information (hereinafter

24  "**PII**") of Doe so that he can identify Doe in order to pursue the Civil Case. *Id.* ¶ 14.

25    The Court issued its July 2, 2024 Order Granting in Part and Denying in Part Ex Parte

26  Application for Order Permitting Discovery for Use in a Foreign Proceeding (hereinafter "**Order**")

27  in which the Court granted the Application. ECF No. 7. The Applicant served the subpoena and

28

*Case No. 24-mc-80152-EJD*
*Opposition to John Doe's Motion to Quash*

the Order upon Google on July 9, 2024. ECF No. 13-1, ¶ 3; Declaration of Carlos Makoto Taitano (hereinafter "**Taitano Decl.**") ¶ 4, Ex. A, Nov. 20, 2024. The Order required that Google notify Doe no later than 10 days after service of the subpoena, and allowed Google and Doe to file a motion to quash no later than 30 days after service or notice. ECF No. 7, at 7.

At some time after July 19, 2024, the Applicant observed that Doe removed videos from the YouTube Channel, including the YouTube Video. 3d Kim Decl. ¶ 5.

On August 7, 2024, the Applicant and Google stipulated to extend Google's deadline to file a motion to quash, and the Court granted the stipulation on August 8, 2024, extending the deadline to September 9, 2024. ECF Nos. 11, 12.

Google filed its motion to quash on September 9, 2024. ECF No. 13.

At some time after September 9, 2024, Doe republished many of his videos, including the YouTube Video, to the YouTube Channel. 3d Kim Decl. ¶ 6.

The Applicant filed its opposition on September 23, 2024, and Google filed its reply on September 30, 2024. ECF Nos. 13-16.

On October 23, 2024, the Court set the hearing date to hear Google's motion to quash for November 20, 2024. ECF No. 18.

On or about November 8, 2024, the Applicant observed that Doe removed all videos from the YouTube Channel, and that Doe changed the YouTube Channel's URL to https://www.youtube.com/@Fishermanwithgod. 3d Kim Decl. ¶ 8.

On November 12, 2024, Doe filed his motion to quash the subpoena, almost three months after the deadline to file had passed, 8 days before Google's motion hearing date, and after he had removed all of his videos from the YouTube Channel. ECF No. 21; 3d Kim Decl. ¶ 8.

## IV.    LEGAL STANDARD

"To determine whether a party's failure to meet a deadline constitutes 'excusable neglect,' courts must apply a four-factor equitable test, examining: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the

*Case No. 24-mc-80152-EJD*
*Opposition to John Doe's Motion to Quash*

1   reason for the delay; and (4) whether the movant acted in good faith." *Ahanchian v. Xenon Pictures,*

2   *Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010) (*citing Pioneer Inv. Servs. Co.*, 507 U.S. at 395).

3   Rule 45(d)(3)(A)(iii) of the Federal Rules of Civil Procedure requires a court to "quash or

4   modify a subpoena that requires disclosure of privileged or other protected matter, if no exception

5   or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).

6   ## V.   ARGUMENT

7   The Applicant respectfully asks that the Court not consider Doe's motion to quash, which

8   appears to have been ghost-written, and which was filed late and is purportedly supported by

9   evidence that cannot be verified because such evidence has been destroyed by Doe. Each issue is

10   addressed below.

11   **A. Doe's motion to quash should not be considered because it appears to have been ghostwritten; if, however, the Court decides to consider Doe's motion to quash, Doe should not be afforded the leniency normally afforded to *pro se* litigants.**

13   Doe's motion to quash appears to have been ghost-written by someone with legal training,

14   not by Doe. Taitano Decl. ¶¶ 2-13. Ghost-writing occurs when an attorney drafts pleadings or court

15   filings on behalf of a *pro se* litigant who, in turn, signs them *pro se*. *Flynn v. Love*, 3:19-CV-00239-

16   MMD-CLB, 2023 WL 2561158, at *4 (D. Nevada Mar. 16, 2023). Ghost-writing is an

17   inappropriate practice and attorneys who engage in the practice are subject to sanction under

18   Federal Rule of Civil Procedure 11. *Walker v. Pacific Maritime Assoc.*, Case No. C07-3100 BZ,

19   2008 WL 1734757, at *2 (N.D. Cal. Apr. 14, 2008). Ghost-writing is inappropriate for several

20   reasons. First, because the standard practice of federal courts is to interpret *pro se* filings liberally,

21   allowing ghost-writing would disadvantage the opposing party. *Flynn*, 2023 WL 2561158, at *4.

22   Second, ghost-writing is a deliberate evasion of responsibilities imposed by Federal Rule of Civil

23   Procedure 11, which requires attorneys to personally represent that there are grounds to support

24   assertions made in each filing. *Id.* Third, ghost-writing implicates the Rules of Professional

25   Responsibility. *Id.* Moreover, ghostwriting prevents the court from examining the arguments set

26   forth in Doe's papers during oral argument, and is prejudicial to the Applicant. *Walker*, 2008 WL

27   1734757, at *2.

28

Page **5** of 17

*Case No. 24-mc-80152-EJD*
*Opposition to John Doe's Motion to Quash*

1   Although a party would be first admonished to not engage in ghost-writing in future filings

2   in an ordinary civil case, because the Applicant's application for court-ordered discovery pursuant

3   to Section 1782 and a motion to quash a Section 1782 subpoena is a dispositive matter, *CPC Patent*

4   *Technologies Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 808 (9th Cir. 2022) (Section 1782 application

5   is a dispositive matter); *Khrapunov v. Prosyankin*, 931 F.3d 922, 931, n.3 (9th Cir. 2019) (Callahan,

6   J., concurring in the judgment and dissenting) (concluding that a motion to quash a Section 1782

7   subpoena is a case-dispositive matter), the Applicant respectfully asks that the Court deny or

8   summarily strike Doe's ghost-written motion to quash because it unfairly prejudices the Applicant,

9   involves misrepresentation to the Court, and is far below the level of candor which must be met

10  by members of the bar. *Flynn*, 2023 WL 2561158, at *4.

11      If the Court decides to consider the motion to quash, the Applicant respectfully asks that

12  the Court not provide the leniency ordinarily afforded to *pro se* litigants, but instead hold Doe to

13  the standards applicable to members of the bar, because the motion to quash was likely ghost-

14  written by someone with legal training. *Flynn*, 2023 WL 2561158, at *5 (Ghost-writing party is

15  cautioned by the court that any future ghost-written filings will be summarily stricken); *Smallwood*

16  *v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1222-23 (D. Haw. 2010) (court found that striking was too

17  drastic a remedy, but court did not liberally construe the pleadings as it normally would for a *pro*

18  *se* party).

19           **B.  Doe's motion to quash should be denied because Doe failed**
                  **to show that his failure to meet the deadline to file the motion**
20                **to quash constitutes excusable neglect.**

21      "Federal Rule of Civil Procedure 6(b)(1)(B) governs extensions of time after the relevant

22  deadline has expired." *Escamilla v. Miranda*, Case No. 23-cv-05033-BLF, 2024 WL 390071, at

23  *1 (N.D. Cal. Jan. 31, 2024). "Rule 6(b)(1)(B) states that, '[w]hen an act may or must be done

24  within a specified time, the court may, for good cause, extend the time ... on motion made after the

25  time has expired if the party failed to act because of excusable neglect.'" *Id.*; *Pioneer Inv. Servs.*

26  *Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392-93 (1993) (stating standard for excusable

27  neglect under Rule 6(b) is the same as that of Rule 60(b)(1)). "To determine whether a party's

28

*Case No. 24-mc-80152-EJD*
*Opposition to John Doe's Motion to Quash*

failure to meet a deadline constitutes 'excusable neglect,' courts must apply a four-factor equitable test, examining: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Ahanchian*, 624 F.3d at 1261 (*citing Pioneer Inv. Servs. Co.*, 507 U.S. at 395). After the time for filing has expired, the court may extend the time only upon motion. Fed. R. Civ. P. 6(b)(1)(B). To treat all postdeadline "requests" as "motions" (if indeed any of them can be treated that way) would eliminate the distinction between predeadline and postdeadline filings that the Rule painstakingly draws. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896 n.5 (1990). Surely the postdeadline "request," to be even permissibly treated as a "motion," must contain a high degree of formality and precision, putting the opposing party on notice that a motion is at issue and that he therefore ought to respond. *Id.*

The Applicant served the subpoena and the Order upon Google on July 9, 2024. ECF No. 13-1, ¶ 3; Taitano Decl. ¶ 4. The Order required that Google notify Doe no later than 10 days after service of the subpoena, and allowed Google and Doe to file a motion to quash no later than 30 days after service or notice. ECF No. 7, at 7. Pursuant to the Order, Google was required to notify Doe by no later than July 19, 2024. *Id.*; Taitano Decl. ¶ 4. Although Google has not submitted evidence as to when it notified Doe, assuming arguendo that Google notified Doe on July 19, 2024, pursuant to the Order, Doe was required to file his motion to quash by no later than August 19, 2024 (because August 18, 2024 falls on a Sunday). Doe filed his motion to quash on November 12, 2024, 85 days after the deadline set by the Order, and only eight days before Google's motion to quash hearing date. ECF No. 21. Doe has not filed a motion to extend the time to file Doe's motion to quash after the time to file has expired, has not explained excusable neglect, if any, in the motion to quash, and has not even acknowledged that his filing is late. *Id.* Nonetheless, the Applicant will consider each prong of the four-factor equitable test articulated in *Pioneer* to determine whether Doe's failure to meet the deadline constitutes excusable neglect.

//

//

*Case No. 24-mc-80152-EJD*
*Opposition to John Doe's Motion to Quash*

1

### 1. *First Prong: the danger of prejudice to the Applicant.*

To establish prejudice under the first prong of *Pioneer*, there must be more harm than simply a delay in resolving the case. *See TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir.2001), *overruled on other grounds*, *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001) ("[t]o be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying the resolution of the case"). Prejudice is "tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *See Thompson v. American Home Assur. Co.*, 95 F.3d 429, 433–34 (9th Cir.1996).

Doe's late filing has prejudiced the Applicant for the following reasons. First, due to the delayed filing of Doe's motion to quash, the Applicant has only had seven days to respond to Doe's motion, limiting the Applicant's ability to fully address the issues and allegations raised in the motion, causing significant prejudice to the Applicant. Furthermore, in this case, because the Applicant's sole purpose is to identify the true identity of Doe, each delay caused by Doe increases the chance that Doe will not be identified, because the information obtained through discovery will become obsolete over time, resulting in tangible harm in the form of loss of evidence. ECF No. 1-2, ¶ 26(m)-(n); s*ee TCI Grp. Life Ins. Plan*, 244 F.3d at 701. Since being notified about the subpoena sometime in July, Doe has attempted to destroy or fabricate evidence by removing his videos and removing comments that are supportive of the Applicant that do not align with the false and defamatory message that he is attempting to portray, culminating in Doe removing all of his videos from the YouTube Channel. 3d Kim Decl. ¶¶ 5-8. Therefore, if Doe's belatedly filed motion to quash is allowed to be considered, the Applicant will be prejudiced because it did not have sufficient time to fully address the various issues and accusations raised in the motion, and the Applicant is concerned that consideration of the motion to quash will delay the resolution of this Case, prejudicing the Applicant because it will result in the loss of time sensitive evidence and will allow Doe to further destroy or fabricate evidence to his advantage. Therefore, the first prong significantly weighs in favor of denying Doe's belatedly filed motion to quash.

//

*Case No. 24-mc-80152-EJD*
*Opposition to John Doe's Motion to Quash*

2.  _Second Prong: the length of the delay and its potential impact on the proceedings._

Doe's motion to quash was filed at least 85 days after the deadline set by the Order, and only 8 days before Google's motion to quash hearing date. ECF Nos. 7, 21; Taitano Decl. ¶ 4. On November 13, 2024, the Court ordered that any responses to Doe's motion to quash be filed by November 19, 2024, which allowed the Applicant only six days to respond. ECF No. 22. In the context of this case, the Applicant's length of the delay is significant, the delay is in clear violation of the Order, and has had a significant negative impact on the proceedings by allowing the Applicant only six days to respond, instead of the fourteen days normally allowed under the Local Rules. Civil L.R. 7-3(a). Therefore, the second prong significantly weighs in favor of denying Doe's belatedly filed motion to quash.

3.  _Third Prong: the reason for the delay._

Doe not only failed to provide any reason for the delay, he also has not even acknowledged that his filing is late. ECF No. 21. Therefore, Doe has failed to articulate any reason for the delay, and for this reason, the third prong significantly weighs in favor of denying Doe's belatedly filed motion to quash.

4.  _Fourth Prong: whether the movant acted in good faith._

Doe has not only provided no reason for the delay, he has not even acknowledged that his filing is late. ECF No. 21. Therefore, the Applicant has no means to analyze whether Doe acted in good faith. However, considering the fact that Doe has attempted to destroy or create favorable evidence on numerous occasions prior to his filing of the motion to quash, culminating in Doe deleting all of the videos on the YouTube Channel, the movant is not acting in good faith because he is engaging in evidence spoliation and fabrication, and the Applicant suspects that Doe is only filing this belated motion to quash to further delay the resolution of this case in hopes that the Applicant will either give up or not be able to obtain relevant evidence from Google. Therefore, the fourth prong significantly weighs in favor of denying Doe's belatedly filed motion to quash.

In addition to Doe's failure to file a motion to be excused for Doe's failure to comply with the filing deadline as required by Federal Rule of Civil Procedure 6(b)(1)(B), because all four

_Case No. 24-mc-80152-EJD_
_Opposition to John Doe's Motion to Quash_

equitable factors weigh against finding excusable neglect in Doe's delay in filing the motion to quash after the deadline, the Applicant respectfully asks that the Court deny Doe's motion to quash for failure to file a motion to be excused for the failure to comply with the filing deadline as required by Federal Rules of Civil Procedure 6(b)(1)(B), and for lack of excusable neglect.

Although Doe's motion to quash should not be considered for the foregoing reasons, even if the Court does consider the motion to quash, the motion to quash nevertheless should be denied.

### C. Doe's speech is not protected by the First Amendment because Doe is not a United States citizen, the speech was published in a foreign country, and the speech is directed towards a foreign audience.

*1. No First Amendment rights apply to Doe, who is not a United States citizen, and who published the YouTube Video in Korea in the Korean language directed towards a Korean audience.*

The First Amendment of the United States Constitution protects the rights of individuals to speak anonymously. *Watchtower Bible & Tract Soc'y of New York v. Village of Stratton*, 536 U.S. 150, 165-67 (2002). "U.S. citizens, whether inside or outside U.S. territory, possess First Amendment rights." *In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corporation dated July 23, 2020*, 337 F.R.D. 639, 649 (N.D. Cal. 2020) (*citing Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc. ("USAID I")*, 570 U.S. 205 (2013)). "While under some circumstances non-citizens within a U.S. territory possess certain constitutional rights, 'it is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution.'" *Id.* (*citing USAID I*, 570 U.S. 205); *Zuru, Inc. v. Glassdoor, Inc.*, 614 F. Supp. 3d 697, 706 (N.D. Cal. 2022) (*citing Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc. ("USAID II")*, 591 U.S. 430, 433 (2020)) (same proposition). Thus, if Doe "is a U.S. citizen or if he is a non-citizen within U.S. territory, then he may properly invoke the First Amendment; otherwise, he may not." *In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corporation dated July 23, 2020*, 337 F.R.D. at 649.

Doe states in his motion to quash that he is "a U.S. resident currently living in the U.S." ECF No. 21, at 1. Therefore, Doe is allegedly residing in the United States, but he is not a "U.S.

citizen". It should be noted that Doe has failed to file any evidence that he is actually "residing" in the United States.

Assuming arguendo that Doe is truly in the United States, and is therefore a "non-citizen within U.S. territory", that is irrelevant, because the YouTube Video was published from the Republic of Korea on January 3, 2024, which is prior to Doe apparently entering the United States. ECF No. 14-1, ¶ 5; ECF No. 13-1, ¶ 4.

The Applicant was unable to find any case authority directly addressing the issue whether a non-citizen can invoke First Amendment protections for speech published in a foreign country directed towards a foreign audience, if the speaker enters the United States after publishing such speech. However, when invoking First Amendment protections for foreign nationals, courts have emphasized where the foreign national was present when the speech was published. *In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corporation dated July 23, 2020*, 337 F.R.D. at 649 ("Doe was legally present within the U.S. at the time he sent the emails at issue"); *Free Speech Coalition, Inc. v. Paxton*, 95 F.4th 263, 287 (5th Cir. 2024), *cert. granted*, 144 S.Ct. 2714 (2024) ("all plaintiffs have First Amendment rights, insofar as they are speaking in the United States. We have never held that because of their lack of citizenship, non-Americans have no rights under the First Amendment when they speak in the United States"). *In re Rule 45* and *Free Speech Coalition, Inc.* are instructive, and those courts should be followed in applying First Amendment protections based upon "where the speaker published his speech", not based upon "where the speaker may coincidentally be at the time when discovery is being sought from the speaker".

Therefore, Doe possesses no rights under the U.S. Constitution and may not invoke First Amendment protections because he is a foreign national and the speech at issue was published in a foreign country. First Amendment protections should not be expanded to speakers in a foreign country merely because the speaker is coincidentally in the United States at the time that discovery is being sought.

//

//

*Case No. 24-mc-80152-EJD*
*Opposition to John Doe's Motion to Quash*

2.   *The YouTube Video was published in Korea and was not directed to the United States.*

The First Amendment protects speech for the sake of both the speaker and the recipient. *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 743 (9th Cir. 2021). There is a First Amendment right of domestic listeners to receive speech from foreign speakers. *Id.* at 744 (*citing Kleindienst v. Mandel*, 408 U.S. 753 (1972)). However, where the speech at issue is "in other nations," it does not involve a right to receive information in the United States. *Id.* The speech at issue must be "directed at and received by [United States] residents". *Id.* (words in brackets added).

In this case, the speaker Doe published the YouTube Video in Korea, in the Korean language, concerning the Applicant who works and resides in Korea, and directed towards a Korean audience. Based upon these facts, the Anonymous Individual's speech was "in Korea" and was not "directed at and received by United States residents".

The only "connections" of the Applicant and Doe to the United States are that Doe published the defamatory statements on YouTube operated by Google, a Delaware corporation, and that Doe purportedly entered the United States after publishing his speech in Korea. *Thunder Studios, Inc.*, 13 F. 4th at 748-50 (Lee, J., dissenting).

The mere fact that the Applicant or Doe used Google's services have no effect upon the analysis, because Google operates worldwide, with its services provided in multiple languages including Korean, and merely using Google's services could hardly be considered as directing speech at United States residents.

Although there is a possibility that a resident of the United States "may" view the YouTube Video because it was published on the internet (which can be viewed by anyone worldwide), under *Thunder Studios, Inc.*, First Amendment protections only attach if the speech was "directed" to United States residents, which there is no indication of in this Case. *Thunder Studios, Inc.*, 13 F.4th at 744. Furthermore, allowing First Amendment protections because United States residents "may" view the YouTube Video would be an overextension of First Amendment protections, potentially applying First Amendment protections to any and all speech online, which is contrary to both Ninth Circuit and U.S. Supreme Court precedent which have consistently held that foreign persons have

*Case No. 24-mc-80152-EJD*
*Opposition to John Doe's Motion to Quash*

no First Amendment Rights. *In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corporation dated July 23, 2020*, 337 F.R.D. at 649 (*citing USAID I*, 570 U.S.); *Thunder Studios, Inc.*, 13 F.4th at 744.

Furthermore, the Anonymous Individual published the YouTube Video on January 3, 2024, and on or after January 25, 2024, the Anonymous Individual's IP logs began to originate from the United States. ECF No. 14-1, ¶ 5, Ex. 1; ECF No. 13-1, ¶ 4.

Because the YouTube Video was published in Korea in the Korean language and concerns the Applicant who lives and works in Korea, there is nothing to indicate that the speech was directed at users in the United States, and although Doe may have been in the United States at some point in time, that does not extend First Amendment protections to speech of a foreign national in a foreign country that was not directed at users in the United States. Therefore, First Amendment protections should not be extended to the Anonymous Individual in this Case.

### D. Doe's assertion that he will be exposed to potential retaliation lacks any basis in fact.

The Applicant asserts that he will be exposed to potential retaliation, and to support his assertion, states that the founder of Life Word Mission was a key member of Salvation Sect, which was suspected of an incident that was detailed in a Netflix documentary. ECF No. 21, at 3.

Doe's assertions miss the point, as the Applicant, not Life Word Mission, is seeking discovery for statements made against the Applicant, harming the Applicant's reputation, not that of Life Word Mission. Furthermore, Doe failed to provide any information about any retaliation or harm that Life Word Mission has ever caused to anyone, and is asserting that he will be subjected to retaliation based upon conduct by an organization that is unrelated to Life Word Mission or its founder.

The founder of Life Word Mission left the Salvation Sect a long time ago because he was opposed to how the Salvation Sect was handling believers' donations, and he no longer has anything to do with the Salvation Sect. 3d Kim Decl. ¶ 9. Life Word Mission has publicly announced that it has nothing to do with the Salvation Sect. *Id.* ¶ 10. Therefore, although Doe attempts to connect Life Word Mission and the Salvation Sect, there simply is no such connection.

*Case No. 24-mc-80152-EJD*
*Opposition to John Doe's Motion to Quash*

Furthermore, to support his assertion that he will be exposed to physical harm, Doe attaches an unverified Exhibit A which contains one comment directed at Doe. However, Doe fails to explain when and where this comment was published. This comment may have been to a video other than the YouTube Video, or even from a completely different channel. Even if this comment was to the YouTube Video, and even it if was posted by a follower of Life Word Mission, it simply is a comment posted by someone who is extremely mad because of the false and defamatory statements contained in the YouTube Video. The Applicant respectfully asks that the Court strike Exhibit A, because it is unverified, it lacks any context as to when and where it was posted, and especially, because the Applicant has no means to verify the veracity of this comment, as Doe has destroyed evidence by removing all videos from the YouTube Channel.

Furthermore, Doe states that Life Word Mission can direct physical attacks on Doe if Life Word Mission learns of Doe's identity because it has churches in the United States. ECF 21, at 3. Under Korean privacy laws, the Applicant is prohibited from disclosing personal information about Doe to a third party outside the civil case in Korea, third parties are prohibited from using such information, and therefore, Doe will remain anonymous to non-parties of the civil lawsuit in Korea. Fourth Declaration of Kyongsok Chong ¶ 5, Nov. 20, 2024. Therefore, contrary to Doe's allegations, Doe's identity will remain private in the Republic of Korea. Regardless, Doe's allegations are baseless, as can be seen by Doe's failure to provide any evidence that Life Word Mission has directed physical harm against anyone in the past.

### E. The Applicant did not fabricate any evidence or mislead the Court.

Doe baselessly accuses the Applicant of fabricating evidence or misleading the Court. The Applicant has done neither.

Doe alleges that "[the Applicant] makes a false and misleading statement by claiming it involves some situation in Mongolia. There is in [sic] no mention or suggestion of Mongolia in the video nor any timeline for a pastor returning to Korea from there". ECF No. 21, at 3. This allegation of Doe misstates the facts.

First, the Applicant has never stated that the YouTube Video mentions Mongolia or that it suggests Mongolia. Second, as to Doe's allegation that there is no mention or suggestion of a timeline for a pastor returning to Korea, that misrepresents the YouTube Video. Between 0:44 and 0:56 of the YouTube Video, Doe states "[h]e spent many years in missionary work overseas and served as the general pastor in charge in that country". ECF No. 1-3, Ex. B. This statement infers that the person had returned to Korea from overseas missionary work, and states that the person was the general pastor in the country. Furthermore, between 2:22 and 2:53 of the YouTube Video, Doe states "… this shameless, filthy molester is back in Korea …". *Id.* This statement infers that the person at issue returned to Korea fairly recently. Furthermore, between 2:53 and 2:59, the YouTube Video states "his profile picture in KakaoTalk shows his offspring getting married within the church". *Id.* This statement infers that the child of the person at issue recently got married. As the Applicant has explained, there are only two general pastors of Life World Mission that have returned to Korea from overseas missionary work, and the Applicant is the one whose daughter got married recently of the two general pastors. ECF No. 1-1, ¶27. Therefore, the only person within Life Word Mission that meets the description of the individual described in the YouTube Video is the Applicant, and therefore, Doe clearly targeted the Applicant. Commenters to the YouTube Video as well as believers of Life Word Mission understood the YouTube Video to be targeting the Applicant. ECF No. 1-1, ¶¶ 27-28; ECF No. 14-4, ¶¶ 10-12. If Doe did not intend to target the Applicant, Doe has failed to explain who he was truly targeting.

**F. Doe intended to target the Applicant, and viewers of the YouTube Video clearly understood the YouTube Video to be targeting the Applicant.**

Doe argues that "the video directly states that names have been removed to protect all individuals involved". ECF No. 21, at 4:8-9. However, immediately after that statement in the YouTube Video, Doe sarcastically states "But let's hope that the truth will come out, and in time, this pastor's identity will be revealed, right?" ECF No. 1-3, Ex. B. In addition to this statement, as explained above, Doe inferring that the person at issue recently returned to Korea from missionary

*Case No. 24-mc-80152-EJD*
*Opposition to John Doe's Motion to Quash*

work, stating that the person was a general pastor overseas, and stating that the person's child recently got married, all contradict Doe's assertion that he is not identifying anyone.

Doe further alleges that "[m]any of the comments in the video reflect widespread concerns about the organization Plaintiff represents, and not an individual specifically", without providing any verified evidence to this, and after destroying any evidence to verify this allegation, by removing all of the videos on the YouTube Channel, preventing the Applicant from verifying these allegations. Therefore, the Applicant respectfully asks that the Court strike or disregard this allegation as it is based upon evidence that has been destroyed by Doe.

### G. Doe was not creating YouTube videos with English subtitles on or before the publication of the YouTube Video.

Doe alleges that "[Doe] has created videos with English subtitles to bring global awareness to Life Word Mission's activities." ECF No. 21, at 4:25-26. However, the Applicant viewed many of Doe's videos on the YouTube Channel, but based upon the Applicant's observation, the Applicant did not notice any videos published by Doe with English subtitles on or before the date that the YouTube Video was published. 3d Kim Decl. ¶ 3. Therefore, the Applicant suspects that, if Doe actually did publish videos with English subtitles after the publication of the YouTube Video, he was doing so to fabricate evidence to show ties to the United States. *Id.* Because Doe has destroyed evidence by removing all of the videos from the YouTube Channel, the Applicant cannot evaluate the veracity of those allegations. Therefore, the Applicant respectfully asks that the Court strike or disregard those allegations.

Doe alleges that "Exhibits D through G show screenshots from videos that have been subtitled for a global audience." ECF No. 21, at 5:1. Doe further attempts to describe what those exhibits portray. However, Doe failed to explain when those videos were published, and where they are located. Because Doe has destroyed evidence by removing all of the videos from the YouTube Channel, the Applicant cannot evaluate the veracity of those allegations. Therefore, the Applicant respectfully asks that the Court strike or disregard those allegations.

Throughout Doe's motion to quash, Doe attempts to frame the YouTube Video as bringing awareness to Life Word Mission's activities, and attempts to frame Life Word Mission's activities

*Case No. 24-mc-80152-EJD*
*Opposition to John Doe's Motion to Quash*

1   as an issue of public interest. The YouTube Video is nothing like that. The YouTube Video takes

2   direct aim at the Applicant, and falsely states that the Applicant molested a sister, committed fraud,

3   and committed the sin of drinking alcohol, wrongs that the Applicant has never committed. By

4   accusing the Applicant of these wrongs, Doe has destroyed the Applicant's reputation. Doe even

5   tries to harm the Applicant's daughter's marriage by ridiculing the Applicant's daughter's spouse

6   and his family for getting married to the daughter of someone who has committed such wrongs.

7   ECF No. 1-3, Ex. B. Doe does not argue or provide evidence that those statements are true, because

8   those statements are simply and completely false statements. Although the First Amendment does

9   not protect the YouTube Video, even if it did, the First Amendment would not protect the

10  defamatory statements contained in the YouTube Video that falsely accuse the Applicant of

11  allegedly committing sexual crimes, fraud, and sins, all of which have caused significant harm to

12  the Applicant.

### VI.    CONCLUSION

14      Based upon the foregoing, Doe's motion to quash involves ghost-writing, it was filed late

15  in violation of the Order without excusable neglect, and Doe lacks good faith because he has been

16  destroying evidence and fabricating evidence. Furthermore, contrary to Doe's arguments, Doe is

17  no protected by the First Amendment because he is not a United States citizen and Doe published

18  the YouTube Video in Korea directed toward a Korean audience. Even if the YouTube Video was

19  protected by the First Amendment, the YouTube Video is not protected speech because the

20  defamatory statements contained in the YouTube Video are false, and have caused significant

21  actual harm to the Applicant. Therefore, Doe's motion to quash the subpoena should be denied,

22  and Google should be ordered to provide the requested discovery.

23      Dated: November 20, 2024.

24                                  _____/s/  Carlos Makoto Taitano_____
                                    CARLOS MAKOTO TAITANO
25                                  Attorney for Applicant
                                    Ho Chan Kim
26

27

28

*Case No. 24-mc-80152-EJD*
*Opposition to John Doe's Motion to Quash*

CERTIFICATE OF SERVICE

I, Carlos Makoto Taitano, certify that:

1.  I am more than twenty one years of age, am competent to testify, and have personal knowledge of the matters stated herein.

2.  I am the attorney for the Applicant, Ho Chan Kim, in the above-captioned Case.

3.  On November 20, 2024 in Guam, which was still November 19, 2024 in California, I filed by ECF the Ho Chan Kim's Opposition to John Doe's Motion to Quash dated November 20, 2024, the Fourth Declaration of Kyongsok Chong in Support of Ho Chan Kim's Opposition to John Doe's Motion to Quash dated November 20, 2024, the Third Declaration of Ho Chan Kim in Support of Ho Chan Kim's Opposition to John Doe's Motion to Quash dated November 20, 2024, and the Declaration of Carlos Makoto Taitano in Support of Ho Chan Kim's Opposition to John Doe's Motion to Quash dated November 20, 2024 (hereinafter, collectively, **"Opposition"**) to the Motion to Quash of John Doe, Pro Se that was filed on November 12, 2024.

4.  Apparently, John Doe did not provide an email address to which service could be made, but did include a mailing address by United States Postal Service, at the top of the first page of the Motion to Quash, to which service could be made, in the above-captioned Case.

//

//

//

//

//

//

1

*Case No. 24-mc-80152-EJD*
*Certificate of Service*

5.  Because the United States Post Office in Guam already was closed at the time when I filed the Opposition, I will cause to be served, in the morning on November 21, 2024 and by United States Postal Service <u>Priority Mail Express</u>, <u>Signature Required</u>, <u>Return Receipt for Merchandise</u>, postage fully prepaid, complete copies of the Opposition addressed to: John Doe, Pro Se, 123 Main St., New York City, NY 10001.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 20, 2024.

_____/s/ Carlos Makoto Taitano_____
CARLOS MAKOTO TAITANO

2

*Case No. 24-mc-80152-EJD*
*Certificate of Service*