UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HO CHAN KIM,<br>   Petitioner,<br>  v.<br>GOOGLE LLC,<br>   Respondent. | Case No. 24-mc-80152 (NC)<br><br>**ORDER GRANTING GOOGLE'S MOTION TO QUASH SUBPOENA; AND DENYING DOE'S MOTION TO QUASH SUBPOENA**<br><br>Re: ECF 13, 21 |

  In this miscellaneous civil case, Ho Chan Kim petitions for the issuance of a subpoena to Google LLC demanding production of documents for use in a foreign proceeding in the Republic of Korea pursuant to 28 U.S.C. § 1782.

  According to the Petition, applicant Kim is a Pastor in the Republic of Korea at Life Word Mission, a South Korean Christian religious mission and unincorporated association under the laws of the Republic of Korea. ECF 1. Applicant asserts that he has been harmed by false and defamatory statements made against him on videos posted to YouTube by an anonymous poster using the channel "A Fisherman Catching a Fish." Most significantly, Applicant asserts that the YouTube video falsely accuses the Applicant of molesting a local sister, falsely accuses the Applicant of committing the sin of drinking alcohol, and falsely accuses the Applicant of committing a secret fraud. ECF 1. Applicant claims that the video has harmed his reputation and caused him significant physical and mental harm. ECF 1.

  Applicant asserts that he has filed a civil lawsuit against the Anonymous Individual in the Suwon District Court, Anyang Branch Court in the Republic of Korea under Civil Case Number 2024Gaso117176 for defamation and insulting under the laws of the Republic of Korea. ECF 1. Applicant asserts that the Anonymous Individual has

1   committed the torts of defamation and insulting under Articles 750 and 751 of the Civil
2   Act of Korea. ECF 1.  Applicant contends, however, that he needs to learn the identity of
3   the Anonymous Individual for his civil case to proceed.  Applicant seeks an Order from
4   this Court under section 1782 authorizing a subpoena to Google requesting the Google and
5   YouTube account information (name, date of birth, address, email, phone, bank account
6   information) for the Anonymous Individual, and the five most recent access logs for the
7   account. ECF 1 pp. 14-16.

8   Google LLC is headquartered in Mountain View, California, within this judicial
9   district. Google operates YouTube, a well-known video sharing service. ECF 1.

10   In a preliminary order on July 2, 2024, the Court granted in part the Applicant's
11   motion for issuance of the subpoena. ECF 7. That order required Applicant to serve
12   Google and for Google to provide notice to the account user. Additionally, the Court
13   ordered that "If any party disputes the subpoena, Google shall preserve but not disclose the
14   information sought by the subpoena pending resolution of that dispute." ECF 7 ¶ 6. The
15   July 2 Order was "without prejudice to any argument that may be raised in a motion to
16   quash or modify the subpoena from Google or any account users." ECF 7 ¶ 7.

17   Google then moved to quash the subpoena. ECF 13. Google argues that the
18   subpoena request both "conceals an attempt to circumvent foreign proof-gathering
19   restrictions or other policies of a foreign country or the United States," and "is "unduly
20   intrusive or burdensome" because it seeks to unmask an anonymous user who is at least
21   partially protected by the First Amendment of the U.S. Constitution. *Intel Corp. v.*
22   *Advanced Micro Devices, Inc.,* 542 U.S. 241, 260-61 (2004). Applicant opposed the
23   motion to quash. ECF 14. Google replied. ECF 15. The Court held a public hearing by
24   video on November 20, 2024. All parties (Applicant and Google) to this proceeding have
25   consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c)(1). ECF 19,
26   20. A final order may be reviewable on appeal to the Ninth Circuit Court of Appeal.

27   "John Doe" anonymous account user also filed a motion to quash the subpoena on
28   November 12, 2024. ECF 21. This was long after the 30-day deadline set by the Court in

1 ECF 7.  Doe's motion urges the Court to quash the subpoena, arguing that disclosure of
2 Doe's identity would chill Doe's First Amendment free speech rights and lead to
3 retaliation against Doe.  Applicant opposed and objected to the Doe motion.  ECF 24.  The
4 Doe account user did not appear at the hearing.

5       This Order now turns to the standard for approving section 1782 discovery
6 applications.  Title 28 U.S.C. § 1782 provides federal court assistance in gathering
7 evidence for use in foreign tribunals.  *Intel*, 542 U.S. at 247.  It aims to provide efficient
8 assistance to participants in international litigation and to encourage foreign countries to
9 provide similar assistance in U.S. litigation.  *Id.* at 246. The statute requires that an
10 applicant seeking discovery first meet three threshold criteria: (1) the discovery sought
11 must be from a person residing in the district of the court to which the application is made;
12 (2) the discovery must be for use in a proceeding before a foreign tribunal; and (3) the
13 applicant must be a foreign tribunal or an "interested person." *See* 28 U.S.C. § 1782.

14       Even once the statutory requirements are met, the district court retains discretion to
15 determine whether to grant an application under § 1782.  *Intel*, 542 U.S. at 246. The
16 Supreme Court articulated the following non-exhaustive factors to help district courts
17 determine how to exercise their discretion in granting discovery under § 1782:

18       (1) whether the person from whom the discovery is sought is a participant in the
19 foreign proceeding;

20       (2) the nature of the foreign tribunal, the character of the proceedings underway
21 abroad, and the receptivity of the foreign government, court, or agency to U.S. federal
22 court judicial assistance;

23       (3) whether the discovery request is a concealed attempt to circumvent foreign
24 proof-gathering restrictions or other policies of a foreign country or the U.S.; and

25       (4) whether the discovery is unduly intrusive or burdensome.
26 *See Id.*, 542 U.S. at 264–65.

27       Here, Google does not contest that the Applicant satisfies the threshold statutory
28 factors: (1) Google "resides" in this District in that its corporate headquarters are located

3

1  here; (2) the discovery is "for use" in a civil proceeding in the Republic of Korea; and (3)
2  Applicant is an "interested person" in that he alleges he was the victim of the alleged
3  defamation and insulting in the video posted to YouTube. Turning to the discretionary
4  *Intel* factors, Google also does not contest that it is not a participant in the proceeding in
5  Korea; and that the Court in Korea would be receptive to assistance from the U.S. court.
6  Google's emphasis is on the third and fourth *Intel* factors. The Court therefore explores
7  the third and fourth *Intel* factors in greater depth, starting with the fourth factor.

8        The fourth *Intel* factor weighs in favor of quashing the subpoena if it is unduly
9  burdensome or intrusive. This is analogous to the Court's consideration of "undue burden
10 or expense" on a third party subject to a civil subpoena under Federal Rule of Civil
11 Procedure 45(d)(1). And the "undue burden" asserted here by Google is the unmasking of
12 anonymous speech by its user.

13       It is now well settled in the United States that "an author's decision to remain
14 anonymous, like other decisions concerning omissions or additions to the content of a
15 publication, is an aspect of the freedom of speech protected by the First Amendment." *See*
16 *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (citations omitted).
17 As with other forms of expression, the ability to speak anonymously on the Internet
18 promotes the robust exchange of ideas and allows individuals to express themselves freely
19 without "fear of economic or official retaliation ... [or] concern about social ostracism."
20 *Id.* (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-342 (1995)). But the
21 right to speak, whether anonymously or otherwise, is not unlimited, and the degree of
22 scrutiny varies depending on the circumstances and the type of speech at issue. *Id.* For
23 example, some speech, such as fighting words and obscenity, is not protected by the First
24 Amendment at all. *See, e.g., Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72,
25 (1942).

26       Accordingly, when a 1782 application seeks to unmask an anonymous online
27 speaker, the Court must assess and balance the risk that doing so will cast aside First
28 Amendment constitutional protections. *Highfields Capital Mgmt., L.P. v. Doe*, 385 F.

4

1  Supp. 2d 969, 974 (N.D. Cal. 2005).  But a threshold question is whether and how the First
2  Amendment applies to speech by an anonymous speaker that crosses international borders
3  over the Internet and allegedly injures someone outside the United States.  Many recent
4  cases in this District have grappled with this difficult question, such as *hey, Inc. v. Twitter,*
5  *Inc.*, No. 22-mc-80034 DMR, 2023 WL 3874022, at *3 (N.D. Cal. June 6, 2023), where
6  Magistrate Judge Donna Ryu found that there was no evidence that an anonymous Twitter
7  user was a U.S. citizen, so did not apply the *Highfields* First Amendment balancing test.
8  And in *In re Takada*, No. 22-cv-80221, 2023 WL 1442844, at *3 (N.D. Cal. Feb. 4, 2023),
9  Magistrate Judge Virginia de Marchi declined Google's suggestion that it should be the
10 1782 applicant's burden to establish the foreign citizenship of the anonymous poster.  She
11 too did not apply *Highfields* and went on to grant the 1782 application in the *Takada* case.
12 2023 WL 1442844, at *3-7.

13     As those cases explain, it is well-settled that "'foreign citizens outside U.S. territory
14 do not possess rights under the U.S. Constitution,' including under the First Amendment."
15 *Zuru, Inc. v. Glassdoor, Inc.*, 614 F. Supp. 3d 697, 706 (N.D. Cal. 2022) (quoting *Agency*
16 *for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2086 (2020)).  In contrast,
17 "U.S. citizens, whether inside or outside U.S. territory, possess First Amendment rights."
18 *In re Takada*, 2023 WL 1442844, at *3.  And for purposes of the First Amendment, the
19 Constitution makes no distinction between citizens and lawful aliens.  *Bridges v. Wixon*,
20 135 U.S. 135, 148 (1945); *U.S. v. Verdugo-Urquidez*, 494 U.S. 259, 270-271 (1990) (citing
21 *Bridges*).  "Once an alien lawfully enters and resides in this country he or she becomes
22 invested with the rights guaranteed by the Constitution to all people within our borders."
23 *Bridges*, 135 U.S. at 161 (concurrence by Justice Murphy).

24     Here, Google submits evidence from its IP access logs that after January 25, 2024,
25 the Doe user only accessed Google using an IP address in the United States.  ECF 13-1.
26 (The date of the YouTube video referenced in the Application is May 17, 2024; see ECF 1-
27 1 ¶ 7). The Doe user also asserts that he or she is a legal United States resident currently
28 living in the United States. ECF 21 at p. 2.  On the other hand, Applicant argues that

1    Google has not proven that the Doe user is a U.S. citizen or legal resident.  And Applicant
2    asserts that the allegedly defamatory video was first posted on January 3, 2024, when
3    Google's IP logs show the user was accessing in Korea.  ECF 14 at p. 13.
4           In totality, the Court finds the First Amendment should apply to anonymous
5    speakers in this situation.  This case is distinct from the *Takada* and *hey, Inc.* cases where
6    there was no evidence to support the proposition that the anonymous speaker was a U.S.
7    citizen or resident alien.  Here, the IP access log data from Google establishes that since
8    January 25, 2024, the user has been posting from an IP address in the United States.  ECF
9    13-1.  The Court agrees with Applicant that use of an IP address itself does not prove
10   citizenship.  But Applicant does not present any counter-evidence.  And the alleged fact
11   that the Doe user previously (before January 25, 2024) accessed from Korea does not
12   waive the protections of the First Amendment.  Because this Order finds that the First
13   Amendment applies to Kim's application, it will apply the *Highfields* balancing test.
14          The *Highfields* test requires the 1782 applicant to "persuade the court that there is a
15   real evidentiary basis for believing that the defendant has engaged in wrongful conduct
16   that has caused real harm" to the applicant by submitting "competent evidence" that
17   "support[s] a finding of each fact that is essential to a given cause of action." If the party
18   seeking discovery satisfies its burden at the first step, the court then balances the harms to
19   each party. *Highfields*, 385 F. Supp. 2d at 975-76 (emphasis removed).
20          Here, Applicant has failed to meet the initial evidentiary threshold. Applicant does
21   not allege a viable claim for defamation or insulting under Korean law because the
22   allegedly defamatory video does not identify them and Applicant offers nothing but
23   speculation to support that the allegedly false claims made in the video are, in fact, about
24   Applicant.  Nor does Applicant offer a plausible rationale for how such indefinite claims
25   could have caused him the alleged harm, much less that the alleged harm was the result of
26   people watching the YouTube videos. The conclusory statements offered by Applicant's
27   counsel in Korea stating that Applicant has made a prima facie case for defamation under
28   Korean law alone cannot satisfy the *Highfields* test. Even if Applicant could state a viable

1  claim for defamation or insulting, the Court finds that under the second part of the
2  *Highfields* test, the magnitude of the harm that would be caused to the anonymous user
3  outweighs the minimal harm that Applicant would suffer if the Subpoena were quashed.
4  Therefore, the fourth *Intel* factor weighs against authorizing the subpoena.

5  The third *Intel* factor also favors quashing the subpoena because Applicant seeks to
6  circumvent U.S. policies and Constitutional rights to freely express oneself anonymously
7  while providing inadequate justification for doing so. *See In re Planning & Dev. of Educ.,
8  Inc.*, No. 21-mc-80242-JCS, 2022 U.S. Dist. LEXIS 14563, at *10 (N.D. Cal. Jan. 26,
9  2022) ("[T]he third discretionary factor may also weigh against granting an application
10 that conceals an attempt to contravene the First Amendment's purpose without
11 justification.").

12 In conclusion, while the Applicant satisfies the statutory Section 1782 factors, the
13 third and fourth discretionary *Intel* factors weigh against approving the subpoena.  At
14 bottom, after applying the balancing test from *Highfields*, the Court finds that Applicant
15 has not shown competent evidence to support his civil claims in Korea and the balance of
16 harms weighs against the Applicant and in favor of the anonymous speaker.  The Court in
17 its discretion therefore GRANTS Google's motion to quash, ECF 13.

18 Finally, the Court addresses the Doe user's separate motion to quash at ECF 21.
19 That motion is denied for three reasons: (1) Google's motion to quash was granted, so a
20 second motion asking for the same relief is superfluous; (2) the motion was filed late; and
21 (3) the Doe user did not appear at the video hearing, so Applicant was unable to challenge
22 the assertions and arguments in the motion.

23 The Court will enter Judgment and close this file.
24 **IT IS SO ORDERED.**

26 Dated: December 31, 2024  _____
27 NATHANAEL M. COUSINS
   United States Magistrate Judge